400 P.2d 503

**J. SEAL, Plaintiff and Appellant,**

**v.**

**TAYCO, INC., Defendant and Respondent.**

**No. 10171.**

Supreme Court of Utah.

March 26, 1965.

Hansen & Sumsion, Salt Lake City, for plaintiff-appellant.

Hanson & Garrett, Salt Lake City, for defendant-respondent.

CROCKETT, Justice.

Plaintiff as collection agent assignee of the American Brakeshoe Company (for brevity and clarity called Amsco, and the interests of both are referred to herein as the plaintiff) sued on an account for wares and merchandise delivered to the defendant Tayco, Inc. At pre-trial it was determined that defendant was indebted in the sum of $3,584.42; and there was reserved for trial the disputed issue as to what, if any, damages plaintiff was liable for on what was, in effect, a counterclaim for breach of contract in failing to deliver a certain order of tractor shoes as agreed. On this issue a jury found in favor of the defendant and assessed damages in the sum of $2,590, which was allowed as a setoff against the account, resulting in a net judgment for plaintiff in the sum of $944.42, plus interest. Plaintiff appeals.

The material facts pertaining to defendant's counterclaim, viewed in the light most favorable to it,[1] are these: Defendant Tayco was a distributor for Amsco products. On January 31, 1957, it obtained an order from Palisades Contractors for 240 tractor shoes described as nonskid manganese shoes for Hd–20 Allis Chalmers tractors. Prior to this on January 25, 1957, pursuant to an inquiry, Amsco had furnished the defendant Tayco a quotation, listing the price for this type of brake shoes at $44 per hundred weight, less 20 per cent for resale, and specifying the delivery date as by April 15th. In reliance on this offer, Tayco accepted the order from Palisades stated above and on the same day issued its purchase order to Amsco for the 240 shoes, indicating the requirement of delivery to be within two weeks after April 1, 1957.

Thereafter there were some communications between the parties about the fact that Amsco did not have the required quantity of that particular type of shoes on hand and as to its ability to manufacture and deliver this full order within the specified time. On February 22, 1957, Amsco advised Tayco in writing that the delivery would be one-half in April and one-half in May. This did not meet the requirements of Tayco's commitment to Palisades, and on April 10, 1957, Palisades

1. See Toomer's Estate v. Union Pacific R. R. Co., 121 Utah 37, 239 P.2d 163.

cancelled its order with Tayco. Tayco promptly advised Amsco orally of this cancellation and later wrote it to that effect. The loss of the Palisades order and the profit defendant Tayco claims to have suffered because of Amsco's refusal to deliver the tractor shoes within the time promised is the foundation of the defendant's counterclaim upon which the jury found the issues in favor of the defendant and assessed damages of $2,590.

Plaintiff's first attack upon the setoff allowed against it is that it is protected from any such claim of damages by the terms of its contract. Upon the face of its offer is the statement that "delivery is subject to the conditions on the reverse side hereof." The reverse side contains numerous paragraphs of fine print including paragraph 4(c), which states:

> "Seller shall not be liable for any *delays or defaults* hereunder by reason of fire, floods, acts of God, labor troubles, inability to secure raw materials, acts of government, or other causes beyond reasonable control. In the event of any such delay, the date of delivery shall be extended for a period equal to the time lost by reason of the delay. *In no event shall seller be liable for special or consequential damages.*"

Plaintiff's position is that the emphasized language gives it blanket protection against *any* claim for special or consequential damages and that this includes the counterclaim in question; whereas the defendant argues that when the whole paragraph is considered together, as it should be, the protection afforded the plaintiff is only for delay caused by fire, flood, act of God, or things of that character beyond the plaintiff's control.

■■■■ In addressing this problem, certain principles should be kept in mind. The first is that in case of uncertainty as to the meaning of the contract, it should be construed most strictly against its framer, Amsco. A particularized application of this well-recognized doctrine is that it seems manifestly unfair to permit one who formulates a contract to so fashion it as to mislead the other party by setting forth a clearly apparent promise or representation in order to induce acceptance, and then designedly "burying" elsewhere in the document, in fine print, provisions which purport to limit or take away the promise, and/or preclude recovery for failure to fulfill it.

Supplemental to and in accord with the foregoing is the principle that it is improper to excerpt from context and give independent meaning to the provision relied upon by the plaintiff. It must be considered in connection with the whole contract and particularly with the entire paragraph within which it is contained. Viewed in that

light we are persuaded that the trial court was correct in concluding that the proper interpretation of the full paragraph is that the exclusion of special or consequential damages relates to and takes its character from the immediately preceding provision excluding liability of plaintiff for delays by reason of fire, flood, act of God, or other catastrophic acts beyond plaintiff's control, and that it does not otherwise protect Amsco from liability for failure to deliver the brake shoes as the defendant reasonably understood the plaintiff's offer to indicate.

Plaintiff further contends that even if the defendant is entitled to a set-off, the amount of $2,590 allowed by the jury is in excess of any possible loss the defendant could have suffered by failure to deliver the brake shoes on time. Analysis of the evidence compels agreement with this contention. The defendant's loss could be no more than the difference between the price it would have had to pay Amsco and what it could have obtained from Palisades for the quantity of brake shoes in question. The figures are a little difficult because the only price offered on the required nonskid brake shoes in the quotation from Amsco is on the basis of $44 *per hundred pounds;* whereas the purchase order from the de-

fendant's customer, Palisades Contractors, is on the basis of $31.70 *per brake shoe unit,* which weigh about 70 pounds each. Upon the basis of these figures, the defendant's purchase price of $44 per hundred would be equivalent to purchasing the 70 pound unit for $30.80. Deducting the 20 per cent plaintiff was entitled to, or $6.16, would make a net cost to defendant of $24.64 per unit. By selling in accordance with the Palisades bid for $31.70 per unit, it would make a profit of $7.06 on each. This multiplied by 240 (the total number ordered) would produce a total profit of $1,694.40. Inasmuch as that is the greatest profit defendant could have made, that is the maximum setoff that can be justified under the evidence. This allowance of damages on a counterclaim by way of setoff is tantamount to a suit on such a cause of action. When an error has been made which is merely a matter of mathematical computation, common sense and simple honesty require that the judgment be corrected.[2] With the correction stated above, the judgment is affirmed. No costs awarded.

McDONOUGH, WADE and CALLISTER, JJ., concur.

HENRIOD, C. J., concurs in the result.

---

2. That the Supreme Court makes mathematical correction of judgment, see Sprague v. Boyles Bros. Drilling Company, 4 Utah 2d 344, 294 P.2d 689; that the same principle applies where a jury verdict is involved, see Boise Ass'n of Credit Men v. United States Fire Insurance, 44 Idaho 249, 256 P. 523.