423 P.2d 153

**Wendell W. MOTTER and Betty F. Motter, his wife, Plaintiffs and Respondents,**

v.

**Russell R. BATEMAN and Myrna Gaye Bateman, his wife, Defendants and Appellant.**

**No. 10552.**

Supreme Court of Utah.

Jan. 25, 1967.

2. 9 Utah 2d 268, 342 P.2d 884, 885.

Maxwell Bentley, Salt Lake City, for appellant.

Pickett & Pickett, St. George, for respondents.

TUCKETT, Justice:

The defendant Russell R. Bateman appeals from a verdict and judgment against him on the plaintiffs' complaint for breach of contract and for rent due and on defendants' counterclaim for recission of the contract.

Prior to August 24, 1961, Wendell W. Motter had been the sole proprietor of a business in St. George, Utah, known as "Motter Electric." The business consisted of the selling and servicing of electrical appliances and electrical equipment. On August 24, 1961, the plaintiff Wendell W. Motter and the defendant Russell R. Bateman discussed the sale of Motter's business to the Batemans. After several conversations Wendell W. Motter offered to sell the business to the defendants for the sum of $25,000. During the negotiations Motter informed Bateman that the book value of the inventory, furnishings and fixtures of the business was $27,994.44. Mr. Motter

arranged with his accountant, Dexter Snow, to make the books of the business available to Bateman for his inspection and to make such investigation as he saw fit. Bateman did, in fact, visit the accountant and discuss various matters pertaining to the business with him. Motter also offered to permit Bateman to make an inventory of the business or to have such an inventory made by others.

On August 28, 1961, the plaintiffs and the defendants entered into a written sales agreement whereby the plaintiffs agreed to sell and the defendants agreed to buy the business here in question. The defendants took over the business on September 1, 1961, and continued in possession of the premises until January 27, 1962. On January 27, 1962, the defendants mailed to the plaintiffs a notice of rescission, the defendants claiming they were entitled to rescind the contract by reason of fraudulent misrepresentations made by Wendell W. Motter prior to the execution of the sales agreement.

Prior to the defendants' notice of rescission the defendant Russell R. Bateman had informed the plaintiff Wendell Motter that he, Bateman, was not making it and would have to give the business back to him. The plaintiffs refused to retake possession of the premises and business but did offer to help the defendants liquidate the same. The defendants attempted to sell such stock as they could prior to the

time they closed the business on January 27, 1962. As of the time of closing the business, the defendants inventoried the stock in trade and left the balance of the stock on the premises.

The plaintiffs, after giving the defendants credit on the contract for the payments made by them and for the value of the property left behind when the defendants vacated the premises, as shown by the defendants' inventory, have commenced this action to recover the balance due under the contract and for the rent claimed due for the business premises. The defendants filed their answer and counterclaimed for a rescission of the contract and the return of the moneys paid to the plaintiffs.

At the time of trial, the court submitted the matter to the jury on a special verdict from which he made conclusions of law and entered a judgment in favor of the plaintiffs.

Appellant assigns as error the court's giving of Instruction No. 7, which is as follows:

In determining whether or not there was misrepresentation in this case you may and should consider whether or not there was any false or misleading statements made by the plaintiff Wendell Motter to the defendants with regard to the cost or value of the inventory, the reason for selling the business, the gross volume of the business or the net profit which the business was producing or had

produced. You may and should consider whether in fact such statement or statements were known to the said plaintiff Wendell Motter to be false and whether they were made with intent that the defendant should rely thereon. You may and should consider also as to whether or not the defendants did in fact rely upon such statements if they were false, or did make a separate and special investigation of the matter so as to rely on other sources as disclosed and uncovered by such separate investigation. You may and should consider whether or not there was in fact any disparity with respect to the intelligence and experience of the parties in this matter, if any you find, which would in fact make the defendants more susceptible to fraud than the ordinary prudent person.

We are of the opinion that the instruction correctly informed the jury of the elements going to make up fraud in the inducement.[1] The latter part of the instruction is, perhaps, more favorable to the defendants than the facts justify. We recognize the principle that where there is a significant disparity of intelligence or experience by which one party is enabled to take advantage of the other, that fact may be considered, but there was no such showing in this case.[2] There was no showing that there was in fact such a disparity of intelligence or experience of the parties as would require the giving of that part of the instruction. The defendants cannot complain as it was favorable to them.

Interrogatory No. 3 of the special verdict was as follows:

If your answer to question No. 2 is "yes," then—Did the plaintiff Wendell W. Motter, prior to the execution of said documents by the defendants, willfully make any false representations to the defendants of and concerning the said business, with intention that the defendants would rely thereon?

The Jury answered this question in the negative.

After the jury had retired, they sent the following question to the court: "We are divided on Question No. 5. Please explain what effect this will have on the following questions in regard to the verdict." Interrogatory No. 5 is as follows:

If your answer to answer No. 3 is "yes," then—Did the defendants have any reasonable opportunity to ascertain the truth of and concerning the said business and with regard to the said representations, if any, of the plaintiff with regard thereto, prior to their executing the said documents?

In view of the fact that the jury answered Interrogatory No. 3 to the effect

1. Stuck v. Delta Land & Water Co., 63 Utah 495, 227 P. 791; Lewis v. White, 2 Utah 2d 101, 269 P.2d 865.

2. Lewis v. White, footnote 1, supra; Reese v. Harper, 8 Utah 2d 119, 329 P.2d 410.

that the plaintiff Wendell W. Motter did not make false representations to the defendants, we are unable to discern in what manner any explanation to the jury as to Interrogatory No. 5 would affect the jury's verdict. It would seem that error, if any, in the court's explanation would in any event be moot.

We are unable to discover reversible error in the record, and the judgment of the court is affirmed. Costs to the respondents.

CROCKETT, Chief Justice, and CALLISTER and HENRIOD, JJ., concur.

McDONOUGH, J., heard the arguments but died before the opinion was filed.