449 P.2d 982

Grant A. WINGER, Plaintiff and Appellant

v.

GEM STATE MUTUAL OF UTAH,
Defendant and Respondent.

No. 11216.

Supreme Court of Utah.

Jan. 29, 1969.

Del B. Rowe, Salt Lake City, for appellant.

Romney & Nelson, George Nelson, Ford G. Scalley, Salt Lake City, for respondent.

TUCKETT, Justice.

The plaintiff brought this action in the court below seeking to recover as a beneficiary under what he claims was a contract of insurance entered into between Grant A. Winger and the defendant insurance company. From an adverse judgment in

the court below the plaintiff has appealed to this court.

On October 25, 1966, one Rex England, an agent for the defendant insurance company, obtained an application from Grant A. Winger for a policy of life insurance in the sum of $5,000, which policy also provided for double indemnity in the event of accidental death. At the time of the application Winger paid to England the sum of $25.60 to be applied upon the first year's premium. At the time England received Winger's application for insurance he gave to Winger an instrument entitled "Conditional Receipt." The face of the receipt acknowledged receipt of the money amounting to two months' premium and also included language "subject to conditions on reverse side." The conditions on the reverse side of the receipt form provide in part as follows:

The effective date of the policy will be the later of: date of application, or date of medical examination, if required, provided that the 1. Proposed insured is determined by the Company at its Business Office in accordance with its rules and practices, to be insurable on such date for the policy exactly as applied for; 2. Full first premium is paid in cash on date of application; 3. Policy is issued exactly as applied for within thirty days from this date; * * *.

No medical examination was required in the case of Winger. The application was forwarded to the home office of the defendant at Pocatello, Idaho, and on November 4, 1966, the defendant after an investigation determined that Grant A. Winger was not insurable on grounds other than medical. The defendant sent a communication to its agent Rex England with instruction to notify the applicant Winger that his application for insurance had been declined by the defendant, and also to refund the premium collected. The communication was received by England on November 7, and he thereafter attempted to contact Winger to notify him of the action of the defendant and to return the premium collected. On November 9, 1966, Winger received fatal injuries in a fall from a scaffold from which he died on January 21, 1967. From the time of the accident until his death Winger remained unconscious and England was unable to communicate with him or to refund the money collected.

In the court below the plaintiff attempted to show that the defendant's agent, Rex England, had express or ostensible authority to bind the defendant in a contract of insurance at the time the application was made by Winger. On conflicting evidence in the court below the court found that England did not have authority to bind the defendant company finally in a con-

**134**

tract of insurance.[1] The question of the agent's authority being a mixed question of law and fact will not be disturbed by this court it appearing to have been made upon substantial evidence upon which evidence the court determined as a matter of law that there was no enforcible contract.

The record before us discloses that the defendant acted within a reasonable time in making its determination that Winger was not insurable under its rules. It also appears that the defendant acted with reasonable dispatch in attempting to communicate to Winger its action declining his application. The defendant had in fact made its determination that Winger was not insurable prior to the accident resulting in the fatal injuries to him.

It is clear from the wording of the receipt that the obligation of the defendant was conditional upon its determination that the applicant was insurable according to its rules and practices. The defendant having made its determination that Winger was not insurable and having elected to decline his application, we are constrained to the view that no contract of insurance existed in favor of the plaintiff.[2] The plaintiff cites the case of Prince v. Western Empire Life Insurance Company[3] recently decided by this court, but it appears to us,

that that case is distinguishable upon the ground that in that case the insurer did not decline coverage prior to the time of the fatal injuries being suffered by the applicant, but that it was seeking further medical information for the purpose of determining the premium to be charged.

The judgment of the court below is affirmed. Costs to the respondent.

CALLISTER, HENRIOD, and ELLETT, JJ., concur.

CROCKETT, Chief Justice (dissenting).

I cannot subscribe to the holding that Mr. Winger was not insured. My view of this record is that the only reasonable conclusion is to the contrary. This is supported both by the testimony, and by the receipt itself upon which defendant relies as a defense; and taking them together, in my opinion, they constitute irrefutable proof that there was a contract of insurance; and there is practically no evidence to the contrary.

It is important to have in mind that insurance is a matter of contract, which is determined by the meeting of the minds of the parties. The evidence is undisputed that the defendant's agent, Mr. Rex England, told the deceased that he was insured

---

1. Couch On Insurance, 2d, Section 26:192.
2. Corning v. Prudential Ins. Co., 273 N. Y. 668, 8 N.E.2d 338; Green v. Equitable Life Assurance Soc., 3 Utah 2d 375, 284

P.2d 695; 44 Yale Law Journal 1223; Leube v. Prudential Ins. Co., 147 Ohio St. 450, 72 N.E.2d 76, 2 A.L.R.2d 936.
3. 19 Utah 2d 174, 428 P.2d 163.

from the time he paid his money and the receipt was issued; and the face of the receipt confirms this. There is no indication that the deceased was in any way made aware of, or that he indicated agreement with the condition which I characterize as "in the fine print" on the back thereof, which the defendant contends nullifies the insurance coverage which the deceased bought and paid for.

The pertinent testimony of the defendant's agent, Mr. England, is:

Q. (By Mr. Rowe) Now, Mr. England, what representations did you make specifically to Mr. Winger before you issued him this conditional receipt you have mentioned?

A. Well, as in all cases, when I give a receipt I tell the man, "This is your receipt for policy, so take particular care of it, *because you are insured. If you walk out of the door, for instance, and have an accident you will be insured.*"

Q. Now, on this point here, did you say those specific words that you have just stated to Mr. Winger at that time?

A. In general, yes.

Q. And you represented to him at that very time he was insured if he would give you the money for this conditional receipt, is that a fair statement?

A. Yes. (Emphasis added.)

It is submitted that in addition to the foregoing testimony, from which the deceased would understand that he was insured from the time he paid his money, this understanding would not be changed by a layman's examination of the receipt itself. The face of the receipt affirmatively showed the insurance coverage. It is in the fine print on the *reverse side* thereof set out below, that the defendant places reliance to nullify the insurance coverage:

"CONDITIONS:

The effective date of the policy will be the later of; date of application, or date of medical examination, if required, provided that the

1. Proposed insured is determined by the Company at its Business Office in accordance with its rules and practices, to be insurable on such date for the policy exactly as applied for;

2. Full first premium is paid in cash on date of application;

3. Policy is issued exactly as applied for within thirty days from this date;

4. Total insurance in force with the Company on the life of the proposed insured, including amount now applied for will not exceed $15,000.

If application is not approved, refund will be made on surrender of this receipt. If you are not advised regarding the proposed

insurance within thirty days, please notify the Company at its Business Office.

Gem State Mutual"

Note well that from the declaration of the first line above, it is stated that where there is no medical examination required, which was the situation here, the insured would understand that the effective date of the policy would be from the "date of application" and that he was insured from that moment forward. The only way he could find out otherwise would be to read the detail of the four subparagraphs and pick out the one which defendant now contends would deprive him of insurance coverage. This, in my judgment, would place an unreasonable burden upon him which cannot justly be done.[1]

The well-recognized rule with respect to such contracts is that the insured is entitled to the benefit of what an ordinary, reasonable and prudent person would understand under the circumstances;[2] and further, that it is impermissible to so fashion a contract that will purport to hold out coverage in one part thereof, and take it away in another.[3] Applying those rules to the testimony and the receipt itself as set out above, there can be no question but that the deceased not only could have believed he was covered, but he could not reasonably be deemed to have believed anything else.

This is also to be observed about this receipt: Ordinarily when one pays money he is entitled to a receipt. The receipt is for his benefit. Its purpose is not to impose upon him some obligation of which he is not aware. Under such circumstances, it would not be at all unnatural for one to accept a receipt and put it in his purse or pocket without even reading it. In fact, so long as he had paid his money, he didn't even have to have a receipt. I cannot see how his rights can fairly be limited by it when it is not shown that he either signed it, agreed to it, or that he was even made aware of its contents.

There is yet another important aspect of this situation. The responsibility for the difficulties which have arisen rests upon the shoulders of the defendant's agent, Mr. England. It was the defendant company who chose him and clothed him with the indicia of authority to represent it in dealing with the public. The deceased had a

1. That the court will not enforce a contract provision that would amount to an unconscionable imposition on the other party see Andreasen v. Hansen, 8 Utah 2d 370, 335 P.2d 404; and Guaranty Natl. Ins. Co. v. Mihalovich, Wash., 435 P.2d 648.
2. See Jorgensen v. Hartford Fire Ins. Co., 13 Utah 2d 303, 373 P.2d 580; Seal v. Tayco, Inc., 16 Utah 2d 323, 400 P.2d 503. For the view that the courts will adopt the interpretation of a contract that will favor the disadvantaged party when he has merely assented to a written contract the terms of which were chosen by the other party, see Corbin § 559.
3. Cf. statement in Seal v. Tayco, supra.

right to regard him as a knowledgeable expert in the insurance business and had no reason to suspect that he was being anything other than honest and straightforward in the representations he made for his company.[4] It impresses me as being singularly unfair to permit the company to now say in effect: You should not have trusted what our agent said, nor even what was said on the face of our documents; you should have cross-examined him carefully, and you should have read all of the fine print on the reverse side, and you would have discovered that the insurance represented by his oral statements and the face of the receipt was but an illusion of insurance which is taken away by the fine print on the reverse side.[5]

There is still another consideration which has a bearing on why the defendant should not in equity and good conscience be permitted to prevail as to its defense. The grounds which the defendant claims it later discovered as a basis for rejecting the insurance had no relation whatsoever to the cause of death. For example, if it had been found that Mr. Winger had had cancer, heart disease or some other affliction and his death resulted therefrom, the defendant would have borne an increased risk, and there would have been quite a different problem as to what justice would require as to its liability.

What I have said above is the basis for my judgment that the only reasonable conclusion to be drawn from the evidence in this record is that the parties had agreed upon insurance coverage of Mr. Winger; that he had paid his premium therefor; that such was the situation at the time of his death; and that the plaintiff therefore should be entitled to judgment.

---

4. Cf. Motter v. Bateman, 18 Utah 2d 335, 423 P.2d 153, where we said: "We recognize the principle that where there is a significant disparity of intelligence or experience by which one party is able to take advantage of the other, that fact may be considered * * *." See also comment in: Lewis v. White, 2 Utah 2d 101, 269 P.2d 865.

5. See Pace v. Parrish, 122 Utah 141, 247 P.2d 273, 276, where we made this comment: "It is strange and inconsistent for the defendant to urge the necessity for the plaintiffs to cross-examine Mr. Parrish and to doubt and verify his representations."