462 P.2d 166

**VULCAN STEEL CORPORATION, Plaintiff and Appellant,**

v.

**Abraham MARKOSIAN, Defendant and Respondent.**

**Abraham MARKOSIAN, Plaintiff and Respondent,**

v.

**VULCAN STEEL CORPORATION and J. Dean Gerstner, Defendants and Appellants.**

**Abraham MARKOSIAN, Plaintiff and Respondent,**

v.

**VULCAN STEEL CORPORATION and J. Dean Gerstner, Defendants and Appellants.**

No. 11554.

Supreme Court of Utah.

Dec. 15, 1969.

2. 315 U.S. 752, 753, 62 S.Ct. 854, 86 L.Ed. 1166 (1942).

3. See footnote 1 above.

Wilford A. Beesley, Lloyd Gerber, Salt Lake City, for appellants.

Warren Patten, of Fabian & Clendenin, Salt Lake City, for respondent.

CALLISTER, Justice:

Vulcan Steel Corporation appeals from a partial summary judgment wherein the trial court ruled as a matter of law that Vulcan was obligated under a written agreement to redeem Markosian's stock at a price to be determined in accordance with said agreement.

The sole issue before this court is whether the trial court properly interpreted subparagraph 3(c) of an agreement between J. Dean Gerstner and Abraham Markosian, which was adopted and ratified by Vulcan Steel Corporation. Gerstner and Markosian are the sole shareholders in Vulcan, owning 51 and 49 per cent of the stock, respectively. In accordance with their agreement, Gerstner was employed by the corporation as President and Treasurer; Markosian was employed as Vice President, General Manager, and Secretary. On January 23, 1968, Markosian submitted his resignation and terminated his employment with Vulcan, and demanded the corporation repurchase his stock pursuant to subparagraph 3(c).

The disputed provision provides:

   (c) *Mandatory Obligation To Purchase Stock Offered.*

At the termination of employment by Corporation of Markosian or Gerstner for any reason, it shall be mandatory for Corporation to purchase all of the stock of Markosian, Gerstner or any stockholder or transferee giving written notice as herein provided of his or her intention to dispose of his or her stock. The purchase price of the stock offered for sale shall be its fair market value at the date of the offer to sell, determined as follows:

\* \* \*

Appellant contends that the mandatory repurchase provision is limited only to the fact situation where the employment is terminated by the corporation. Since Markosian voluntarily resigned 3(c) is not applicable and subparagraph 3(b) is controlling, which permits the disposal of the shares, subject only to the Corporation's option to purchase said shares for 30 days after receipt of notice of intent to encumber or dispose of the stock. In the alternative, appellant contends that 3(c) is ambiguous and the court should permit parol evidence to ascertain the true intent of the parties.

Respondent successfully asserted before the trial court that the words "by Corpora-

tion" modified the word "employment" and not the term "termination," and that such construction is more natural and reasonable and comports with the order in which the words are found in the agreement. Therefore, Vulcan is obligated to repurchase Markosian's shares regardless of the precise circumstances of his termination of employment. Respondent further contends that his interpretation is consonant with the reasonable and natural expectation of a minority shareholder, who has insisted on protection from the majority owner, i. e., the intention of the parties, as revealed by the contract, was to protect the shareholder's capital contribution from being locked into a close corporation, in which there is no market value for the shares, and to provide some means of withdrawal.

In interpreting a contract, the primary rule is to determine what the parties intended by what they said. The court may not add, ignore or discard words in the process, but attempts to render certain the meaning of the provision in dispute by an objective and reasonable construction of the whole contract.[1]

In Seal v. Tayco,[2] this court observed that it is improper to excerpt from context one provision and give it an independent meaning, for the provision must be considered in connection with the whole contract.

1. Cornwall v. Willow Creek Country Club, 13 Utah 2d 160, 162, 369 P.2d 928 (1962).

2. 16 Utah 2d 323, 326, 400 P.2d 503 (1965).

The trial court in a memorandum decision adhered to the foregoing rules and based its conclusion on the following provisions in the agreement:

Recital D: Gerstner and Markosian wish to be assured of a market at a fair price for their shares of stock in Vulcan Steel Corporation in the event their interest is terminated for any reason.

Paragraph 3. *Restrictions on Sale of Stock.* Neither of the parties hereto shall encumber or dispose of this stock except in accordance with the following terms and conditions:

Paragraph 3(a) limits the transfer of stock by gift to members of either party's family, and such transferee holds the stock subject to the limitations set forth in the agreement.

Paragraph 3(b) provides that no stockholder or transferee (3(a)) shall encumber or dispose of the stock without the written consent of all shareholders. In absence of written consent, the shareholder must first offer to sell the stock to the Corporation, which has 30 days from receipt of the notice to purchase the stock.

Paragraph 3(c), as previously mentioned, deals with the contingency of Markosian or Gerstner being terminated in his employment with the Corporation and provides for the mandatory repurchase of the terminated employee's stock.

Paragraph 3(e) provides:

*Dual Notice.* In the event both Markosian and Gerstner wish to *terminate their employment by Corporation,*[3] and desire to have Corporation purchase their stock, the parties hereto agree to vote their stock for the liquidation and dissolution of Corporation. (Emphasis added.)

Paragraph 3(f) provides that upon the death of a shareholder, his stock and any stock owned by his 3(a) transferees shall be redeemed or purchased by the Corporation. Furthermore, the parties agreed that the Corporation would pay for insurance on the two parties; the proceeds were designated to go to the Corporation, as beneficiary, to be used to purchase or redeem the insured's stock.

The trial court observed that the restrictions in the agreement were such as substantially to prevent the transfer of stock beyond the redemption power of the corporation by any shareholder and reflect an intention of the parties to provide for such redemption by the corporation rather than to permit the stock to be sold or transferred by the parties to the agreement or their families. The court found that it was the intent of Markosian and Gerstner to have the corporation redeem the stock of either

3. The similarity of language between 3(c) and 3(e) although not persuasive is significant as a factor supporting respondent's interpretation.

upon termination of employment with the corporation for any reason and that it was not their intention in Paragraph 3(c) to limit such redemption to only such occasions as when the corporation terminated such employment by corporate action. The trial court ruled as a matter of law that Vulcan Steel Corporation was obligated under the agreement to redeem Markosian's stock.

The interpretation of the trial court comports with the standard stated in 4 Williston on Contracts (3d Ed.), § 618, pp. 710–711:

> The writing will be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose. * * *

The various subdivisions of Paragraph 3 create a comprehensive plan to assure a fair price to the shareholders in the event their interests in the corporation are terminated for any reason. Each subparagraph deals with a specific contingency. Appellant's interpretation would delete from this plan any specific provision for the resignation of one of the corporate officers and merely place him in the classification dealing with the disposing or encumbering of the stock. Such an interpretation is plainly contrary to the expressed purposes of the parties in the agreement.

The judgment of the trial court is affirmed. Costs are awarded to respondent.

CROCKETT, C. J., and TUCKETT, J., concur.

HENRIOD, Justice (dissenting).

I dissent for one reason: There are two ways to interpret 3(c), i. e., 1) termination *by the company* of an employment, resulting in liability to purchase stock by the latter, and 2) termination *by the employee,* resulting in no obligation on the part of the company to purchase the stock. The language is not so clear, as Markosian insists, as to resolve doubts. The language being subject to more than one interpretation, I am of the opinion that parol evidence is permissible to resolve such doubts, and thus to explain the contract's terms as the parties intended them to mean. This would require further proceedings, in turn requiring a declaration by this court that a partial summary judgment at this juncture is premature. If such doubts then cannot be resolved factually by such parol evidence, it would follow that the purported contract was nudum pactum on account of uncertainty.

ELLETT, J., concurs in the dissenting opinion of HENRIOD, J.