**Arthur R. PALMER, Plaintiff,**

v.

**The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.**

**Civ. No. 11–114.**

United States District Court,
D. Maine, S. D.

March 31, 1971.

Carl O. Bradford, Freeport, Me., for plaintiff.

Loyall F. Sewall, Portland, Me., for defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

This is an action to recover the proceeds of a life insurance policy alleged to have been issued by defendant, The Mutual Life Insurance Company of New York (MONY) on the life of Arthur R. Palmer, Jr. The parties have submitted the case to the Court on an agreed stipulation of facts.

On October 1, 1969, Arthur R. Palmer, Jr. executed an application to MONY for a $10,000 life insurance policy. With his application, Palmer included a check payable to MONY in the amount of $13.-61 in payment of the first premium. Palmer delivered the application and check to Paul J. Herer, MONY's field underwriter at Bangor, Maine. Herer, in return, delivered to Palmer a "Conditional Receipt." The application signed by Palmer specified that:

> Except as otherwise provided in any conditional receipt issued, any policy, issued shall take effect upon its delivery and payment of the first premium during the lifetime of each person to be insured.

The conditional receipt acknowledged receipt of the first premium "on a proposed * * * insurance policy under which (Arthur R. Palmer, Jr.) is to be the Insured." It further provided:

> No insurance will become effective under this Conditional Receipt except as provided in the Conditions of Agreement on the reverse side hereof * * *.

The relevant part of the Conditions of Agreement on the reverse side of the receipt is the following:

A. *If insurable—For Policy As Applied For*

> If, after such investigations and medical examinations as MONY may require, each person to be insured is found to have qualified, under MONY's rules, as an acceptable insur-

able risk on the App-Exam Date[1] for the policy exactly as applied for, the policy shall be effective from such date.

The application and the check were forwarded to MONY's Falmouth, Maine office, which in turn forwarded them to MONY's home office, where they arrived on October 8, 1969.

On October 16, 1969, a policy of life insurance was prepared by MONY's home office pursuant to the application and forwarded to the Falmouth office, arriving on October 20, 1969. The policy was accompanied by an Underwriting Action Bulletin, which stated that the policy was approved subject to receipt of a satisfactory inspection report and that the policy was to be held by the Falmouth office until instructed by the home office to deliver it to Palmer.

On October 16, 1969, the home office received an inspection report which disclosed that Palmer was not a student at the University of Maine as stated on his application. The home office requested the Falmouth office to verify the accuracy of the report. On November 7, 1969, Herer informed the home office that Palmer had been suspended from the University because of a poor academic record in the 1969 spring semester, but that he had been accepted for readmittance beginning in January, 1970. Herer also advised the home office that Palmer was living at his fraternity house in the interim and had worked for a while on a construction job, but was presently unemployed.

On November 17, 1969, the home office forwarded to the Falmouth office the notification that Palmer's application was suspended pending his actual attendance at the University, and that the previously issued policy was to be destroyed. Pursuant to this notification, the policy was destroyed on November 20, 1969. The notification stated that Palmer might resubmit his application when he was actually attending the University. On November 18, 1969, the Falmouth office notified Herer of the suspension and instructed him to refund the $13.61 initial premium to Palmer and to notify him of the rejection of the application.

Arthur R. Palmer, Jr. died on November 25, 1969 from gunshot wounds without ever receiving notice of MONY's action. Arthur R. Palmer, Sr. was notified of the Company's action on December 1, 1969 and was tendered the $13.61 refund, but he rejected the tender and returned the $13.61 to Herer. He now brings the instant action asserting that the policy was in effect as interim insurance on the date of his son's death because of the payment of the first premium and the delivery of the conditional receipt.

■ The parties agree that the issue presented for determination by this Court is whether the conditional receipt issued by Herer after payment of the first premium of $13.61 by Arthur R. Palmer, Jr. created a contract of temporary insurance, effective as of the application date, which could be terminated only by notification to the proposed insured prior to his death of the rejection of his application, or whether the conditional receipt created a contract of insurance to become effective as of the application date only after defendant had made a good faith determination that Palmer was an acceptable insurable risk. For the reasons to be stated, the Court holds that the conditional receipt did not create a contract of temporary insurance and that therefore the coverage of the proposed policy was not in effect on the date of Palmer's death.

■■ It is well established that the meaning of insurance contracts is to be determined by the same principles of

---

[1]. The Conditions of Agreement define "App-Exam Date" as the later of the application date and the date of the last of any required medical examinations. Apparently, no medical examination was required in Palmer's case.

law as are applicable to other contracts. While ambiguous language is always construed against the insurer which drafted the document, a court may not rewrite the contract when the language employed is free of doubt. Scheinman v. Phoenix Mutual Life Ins. Co., 409 F. 2d 999, 1001 (7th Cir. 1969); Taylor v. New York Life Ins. Co., 324 F.2d 768, 771 (10th Cir. 1963); Mofrad v. New York Life Ins. Co., 206 F.2d 491, 493 (10th Cir. 1953); Novellino v. Life Ins. Co. of North America, 216 A.2d 420, 422 (Del. 1966).

There is no ambiguity or uncertainty in the language of the application and conditional receipt here in question. The application, which was signed by Palmer, states in explicit language that the policy shall take effect only upon its delivery during the lifetime of the proposed insured, except as otherwise provided in the conditional receipt. The face of the receipt is entitled "CONDITIONAL RECEIPT." It expressly provides that no insurance will become effective except as provided in the Conditions of Agreement on the reverse side thereof. The Conditions of Agreement on the back of the receipt state in clear and unequivocal terms that no insurance is effective until the proposed insured is found to have qualified, under MONY's rules, as an acceptable insurable risk for the policy as applied for, and that only after such a determination is the policy to become effective as of the application date. The plain meaning of the language of the receipt is that no contract of insurance comes into effect unless the standard of insurability is met. The good faith of defendant in rejecting the application, which occurred prior to notification of Palmer's death, is not questioned. There is no suggestion in the stipulated record that Herer misrepresented to Palmer that the coverage was immediately effective. Nor is there any indication in the record that the rejection of Palmer's application was not in accordance with defendant's rules. In short, there is nothing in the record to indicate that defendant acted in bad faith or that Palmer was in any way misled or should not be bound by the terms of the application which he signed.

Plaintiff argues that the developing trend in the law is toward interpreting these conditional receipts as contracts of temporary insurance. He cites 43 Am. Jur.2d, Insurance § 221 (2d ed. 1969) and 2 A.L.R.2d 943, 967, § 11 (1948) to support his argument. An examination of these texts, however, discloses that they deal with the so-called "approval" type of receipt, rather than with the "insurable" type of receipt such as is involved in the present case. See Cliborn v. Lincoln National Life Ins. Co., 332 F. 2d 645, 646–647 (10th Cir. 1964). It is true that courts are now holding that receipts conditioned on the *approval* or *acceptance* of the application by the company provide immediate coverage. See, e. g., Gaunt v. John Hancock Mutual Life Ins. Co., 160 F.2d 599 (2d Cir.), cert. denied, 331 U.S. 849, 67 S.Ct. 1736, 91 L.Ed. 1858 (1947). The receipt in this case, however, is conditioned upon the proposed insured's *insurability*, and both the treatises cited by plaintiff recognize the general rule that no immediate coverage is provided unless in fact the applicant is determined to have been insurable as of the application date. See 43 Am.Jur.2d, *supra* at § 222; 2 A. L.R.2d, *supra* at 986, § 16. The courts which have construed "insurable" type receipts similar to the one here being considered have consistently held that they provide insurance from the date of the receipt, subject to the condition that if the company rejects the application in good faith for valid reasons upon the ground that the applicant is not insurable for the proposed policy, no coverage exists even though death occurs before notice of rejection. See, e. g., Scheinman v. Phoenix Mutual Life Ins. Co., *supra*; Cortez v. Life Ins. Co. of North America, 408 F.2d 500 (8th Cir. 1969); Cliborn v. Lincoln National Life Ins. Co., *supra*; Taylor v. New York Life

Ins. Co., *supra*; New England Mutual Life Ins. Co. of Boston, Mass. v. Hinkle, 248 F.2d 879 (8th Cir. 1957), cert. dismissed, 358 U.S. 65, 79 S.Ct. 116, 3 L. Ed.2d 106 (1958); Mofrad v. New York Life Ins. Co., *supra*; Stimmel v. Prudential Ins. Co., 230 F.Supp. 736 (E.D. Pa.1964); Winger v. Gem State Mutual, 22 Utah 2d 132, 449 P.2d 982 (1969); Vargas v. Pacific Nat'l Life Assurance Co., 79 N.M. 152, 441 P.2d 50 (1968); Novellino v. Life Ins. Co. of North America, *supra*; Morgan v. State Farm Life Ins. Co., 240 Or. 113, 400 P.2d 223 (1965); Adolf v. Union Nat'l Life Ins. Co., 170 Neb. 38, 101 N.W.2d 504 (1960). *Cf.* Wright v. Pilot Life Ins. Co., 379 F.2d 409 (4th Cir. 1967); Simpson v. Prudential Ins. Co., 227 Md. 393, 177 A.2d 417 (1962). In each of these cases the court held that a conditional receipt substantially identical to the instant receipt barred recovery by the beneficiary where the company had made a good faith determination that the proposed insured was not an insurable risk for the policy applied for as of the application date.

In the present case, the execution and delivery of the application, the payment of the premium, and the issuance of the receipt all occurred in Maine, and the parties agree that Maine law controls. The parties further agree that there are no Maine cases in point[2]. No reason appears, however, why the law of Maine should not be in accord with the principles and authorities which have been discussed.

Since no contract of insurance was in effect at the time of Arthur Palmer, Jr.'s death, judgment will be entered for defendant dismissing plaintiff's action with prejudice and without costs.

It is so ordered.

2. Miller v. Liberty Ins. Co., 161 Me 438, 213 A.2d 831 (1965), cited by plaintiff, is plainly inapposite. Not only did this case involve automobile insurance, but defendant's liability was predicated upon an oral contract to provide temporary insurance coverage.