Maurine STEVENSON, as personal representative of LaMar Stevenson, and as trustee of LaMar D. Stevenson Trust, Plaintiff, Appellant, and Cross-Appellee,

v.

FIRST COLONY LIFE INSURANCE COMPANY; Talbert Corporation; and Roger Fleiss, Defendants, Appellee, and Cross-Appellant.

No. 910561–CA.

Court of Appeals of Utah.

March 3, 1992.

---

Allen K. Young and Douglas A. Baxter, Springville, for plaintiff, appellant, and cross-appellee.

Denton M. Hatch and Roger R. Fairbanks, Salt Lake City, for defendants, appellee, and cross-appellant.

Before BILLINGS, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

In May of 1986, LaMar Stevenson, having been delinquent on several premiums due on a life insurance policy with Chubb Life American, was cancelled by Chubb. Stevenson then sought new life insurance coverage on himself through Roger Fleiss, an insurance salesman, and Talbert Corporation,[1] Fleiss's employer at all times rele-

---

1. Talbert Corporation has offices in Salt Lake City, Utah and Denver, Colorado. Roger Fleiss was affiliated with the Salt Lake City office at all times relevant to this case, and Norman

vant to this case. Talbert Corporation and Fleiss recommended to Stevenson that he seek life insurance through First Colony Life Insurance Company.

Stevenson filled out and signed an application provided by Talbert Corporation through Fleiss for life insurance with First Colony in June 1986. The application was signed by Stevenson as the proposed insured, by Roger Fleiss as witness, and by Norman Close of the Denver office of Talbert Corporation as licensed registered agent. Someone wrote on the original application that it was for $1,000,000 coverage. That figure was crossed out and $500,000 written in its place. All parties agree that Stevenson applied for $500,000 in the life insurance application. Stevenson tendered a check payable to First Colony in the amount of $410 shortly after the application was completed. The check was dated July 7, 1986 and represented the first semiannual premium payment. A conditional receipt was issued to Stevenson by First Colony which set forth the conditions under which conditional coverage would become effective prior to policy delivery. The conditional receipt was referred to in two separate paragraphs on the application, and was attached to the application as the last page. The receipt was dated July 7, 1986, and bears only the signature of Norman Close. The conditional receipt further stated that the total amount of life insurance which may become effective prior to policy delivery could not exceed $300,-000. First Colony introduced evidence which indicated that Stevenson was aware the conditional policy was for $300,000, and that he further agreed in a telephone conversation with a First Colony representative to lower the amount of coverage provided in the conditional receipt to $250,000. First Colony negotiated Stevenson's premium check shortly thereafter.

In August 1986, Stevenson's wife, Maurine Stevenson, contacted the Salt Lake office of Talbert Corporation to ask why her husband had not received a policy from First Colony. The record indicates that she spoke with an unidentified person in that office, who informed her that First Colony was not going to insure Stevenson. The reason given to her was that one of Stevenson's companies was in bankruptcy. Neither Stevenson nor his wife received notice of declination from First Colony. The parties do not dispute that First Colony did not notify either of the Stevensons personally or by any form of written notice. In addition, nothing in the record indicates First Colony sent written notice to Talbert Corporation, and the record is unclear as to how someone at Talbert Corporation became aware that First Colony had declined Stevenson's application.

Stevenson sought life insurance coverage with Bankers Life Company in early October 1986. After Stevenson completed the necessary information on the application, he gave the application to Norman Close, who added a comment to the application, disclosing that Stevenson had been declined coverage by First Colony. Norman Close never discussed with the Stevensons what he had added to the application. Stevenson was killed in an accident on October 18, 1986. At the time of his death, neither United Underwriters nor First Colony had returned the premium of $410 paid by Stevenson. The premium payment was not tendered to Maurine Stevenson until December 1986.

The plaintiff, Maurine Stevenson, filed this action against defendants First Colony, Roger Fleiss, and Talbert Corporation, claiming, among other things, that a valid contract of insurance existed at the time of her husband's death. This contention was based upon the fact that no written notice of rejection of the life insurance application was given by First Colony and the premium payment was not returned until months after Stevenson's death. The original complaint stated the life insurance in effect at the time of Stevenson's death was for $250,000. The complaint was amended to reflect an amount of $500,000.

On October 19, 1989, First Colony filed a motion for summary judgment, contending

Close was affiliated with the Denver office. "Talbert Corporation," for purposes of this opinion, refers to the corporation, and no particular office, unless otherwise designated.

that the temporary contract of insurance created by the conditional receipt terminated with First Colony's rejection of Stevenson's insurance application and oral notification to the Stevensons, through Fleiss or Talbert Corporation. Maurine Stevenson countered with a motion for summary judgment, arguing that a valid contract of insurance remained in force as a result of the failure of First Colony to give notice of rejection and to return the premium.

After considering the motions for summary judgment without oral argument, the trial court granted Maurine Stevenson's motion for summary judgment and denied First Colony's motion. The trial court then entered judgment in the amount of $500,000 for Maurine Stevenson. On March 2, 1990, after oral argument on the amount of the judgment, the trial court vacated its earlier order and entered judgment for Maurine Stevenson in the amount of $300,000, based on only the terms of the conditional receipt, and not the face amount of the application. We affirm.

### ISSUES

Both parties appeal. Maurine Stevenson appeals the trial court's determination that the amount of the policy which became effective upon issuance of the conditional receipt was $300,000. In arguing that judgment should be for $500,000, she claims there was a reasonable expectation of full and immediate coverage in the amount of $500,000; that the conditional receipt cannot be construed to limit the amount of that liability; that the policy must be considered together with the receipt; that if an ambiguity exists, it should be resolved in favor of the insured; that a handwritten provision prevails over a printed limitation; and that this court should impose full liability on First Colony in view of First Colony's delay in notifying the Stevensons of rejection and in returning the premium paid by the Stevensons.

First Colony appeals the trial court's determination that life insurance coverage was in effect at the time of Stevenson's death. Specifically, First Colony challenges the trial court's determination that First Colony did not effectively terminate the temporary insurance contract; that the Stevensons did not receive adequate notice that First Colony had rejected Stevenson's application for life insurance; and that written notice and return of premium payment was required to terminate the temporary insurance contract. In the alternative, First Colony claims that if its life insurance coverage was in effect at the time of Stevenson's death, the judgment should have been for $250,000.

### STANDARD OF REVIEW

■ This court has recently articulated its settled standard of review for summary judgment: "Summary judgment can be granted when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Silcox v. Skaggs Alpha Beta, Inc.,* 814 P.2d 623, 623 (Utah App.1991) (citations omitted). "Inasmuch as a challenge to summary judgment presents for review conclusions of law only, because, by definition, summary judgments do not resolve factual issues, this Court reviews those conclusions for correctness, without according deference to the trial court's legal conclusions." *Bonham v. Morgan,* 788 P.2d 497, 499 (Utah 1989) (citation omitted). As for the trial court's determination on the amount of damages, the trial court interpreted the insurance contract as a matter of law and therefore we review its construction under a correctness standard. *See Seashores Inc. v. Hancey,* 738 P.2d 645, 647 (Utah App.1987).

While we would normally address those issues raised in the direct appeal first and then address the cross-appeal issues, in this case we first address cross-appellant First Colony's challenge to the summary judgment. If we find that summary judgment was improperly granted, we need not reach the other issues raised by either party.

### SUMMARY JUDGMENT IN FAVOR OF MAURINE STEVENSON

■ First Colony alleges that Maurine Stevenson's own admissions during dis-

covery establish that First Colony declined to insure her husband, that the Stevensons were aware of the declination, and that First Colony therefore unconditionally terminated the temporary contract of insurance prior to Stevenson's death. The trial court disagreed, finding that "because there was not adequate notice that plaintiff's temporary insurance had been cancelled, and because the premium was not returned timely, the contract was in full force and effect at the time of Mr. Stevenson's death." Therefore, we must determine whether the notice to Talbert Corporation that Stevenson's application for life insurance had been declined by First Colony was adequate notice to Stevenson to terminate the temporary contract of insurance, and whether return of the premium by First Colony to Stevenson was a condition precedent to unilateral termination.[2]

The trial court explicitly relied upon *Smith v. Westland Life Ins. Co.*, 539 P.2d 433 (Cal.1975), in reaching its decision that the policy was in effect at the time of Stevenson's death. In that case, the supreme court of California held that when an insurer has received an application for life insurance together with payment of the first premium, a provisional contract granting temporary insurance is created. That contract is not terminated, according to the California court, until the insurer has nullified the two factors that gave rise to the applicant's expectation that he or she was covered: "his signing of the application and his payment of the premium." *Id.* at 442.

In *Smith*, the applicant signed an application for life insurance and tendered the first month's premium. The insurance agent provided the applicant with a conditional receipt, similar to the receipt issued in the case at bar. After the insurance company processed the application, the agent delivered to the applicant a policy which modified some of the terms original-

ly agreed upon. The applicant refused to accept or sign the modified policy. After several unsuccessful attempts to persuade the applicant to accept the policy as modified, the agent told the applicant his premium would be refunded. The following day the applicant died. The issue on appeal was whether, prior to the applicant's death, the insurance company effectuated a termination of the temporary insurance.

The court found that the applicant had not received written notice of termination of his temporary insurance and "[o]ral communications between Smith and Westland's agents were generally shrouded in terms of his acceptance of a policy with minor modifications." *Id.* at 444. Further, the applicant never received a refund of his premium before his fatal accident. The court's rationale rested upon the principle of effectuating the expectations of the ordinary applicant. *Id.* at 441. The court concluded that an insurer does not terminate temporary coverage until "(a) the insurer has actually rejected the application and by appropriate notice communicated such rejection to the insured and (b) refunded the premium payment to the insured." *Id.* at 440. The trial court in the instant case quoted this language from *Smith* and held that the First Colony temporary insurance contract had not been terminated.

Relying on *Winger v. Gem State Mut.*, 22 Utah 2d 132, 449 P.2d 982 (1969) and *Long v. United Benefit Life Ins. Co.*, 29 Utah 2d 204, 507 P.2d 375 (1973), First Colony argues that it effectively terminated its obligations under the temporary life insurance contract by rejection of the application and notice of the rejection to Talbert Corporation. In *Winger*, the insurance company which had issued conditional life insurance coverage to an applicant determined that the applicant was not insurable. The company sent written notice of rejection to its agent with instructions to notify the applicant that his application had been

---

**2.** Both First Colony and Maurine Stevenson attempt to frame the issue in this case as one of "is written notice required?" However, the trial court, while stating the issue as "whether written notice and return of the premium is required to terminate a temporary life insurance

contract," held that "because there was not adequate notice ... and because the premium was not returned timely, the contract was in full force and effect at the time of Mr. Stevenson's death."

declined. The applicant died before the insurance company's agent was able to contact him. The court held no contract of insurance existed at the time of death because the insurance company "acted with reasonable dispatch in attempting to communicate to [the applicant] its action declining his application." *Winger,* 449 P.2d at 983. In *Long,* the Utah Supreme Court first determined that a conditional receipt "created temporary insurance coverage until such time as the insurers had considered the application and determined to issue a policy or reject the risk." *Long,* 507 P.2d at 379. The *Long* court further held that "the insurer cannot terminate the risk so assumed unless the insured is notified during his lifetime that the application was rejected." *Id.*

We agree with First Colony that Utah law establishes that a contract of temporary insurance is effectively terminated when the application is rejected and the applicant is given adequate notice of that rejection.[3] However, none of the cases cited by First Colony reach the issue of what is "adequate notice." In the absence of express contractual or statutory provisions,[4] we must identify what constitutes adequate notice to terminate a temporary life insurance contract.

▮▮▮ "From the standpoint of content, all that is required of a notice of cancellation is that it be sufficiently specific to manifest an intent to cancel, and to identify the policy in question." 17 Couch on Insurance 2d, § 67:138 at 599 (rev. ed. 1985); *see also Quindlen v. Prudential Ins. Co.,* 482 F.2d 876, 879 (5th Cir.1973) (rejection of application requires communication from company to applicant, as whole purpose of prepayment receipt is to assure an applicant that he is insured *until* company acts—not that he is insured *if* the company acts); *Northern Ins. Co. v. Mabry,* 4 Ariz. App. 217, 419 P.2d 347, 349 (1966). ("Though mutual consent to cancel may be expressed or implied from the circumstances ... such presupposes some communication from the insured to the mind of the insurer."); *Transamerica Ins. Co. v. Bank of Mantee,* 241 So.2d 822, 825 (Miss. 1970) (cancellation must be definite, clear and unequivocal); *Colorado Life Co. v. Teague,* 117 S.W.2d 849, 856 (Tx.Civ.App. 1938) ("[i]nsurer cannot terminate the risk so assumed otherwise than by notice brought home to the insured in his lifetime that his application was rejected."). *See generally* 45 C.J.S., *Insurance,* § 450 p. 86 (1946) (in absence of contractual or statutory provision as to form of notice, all that is required is that notice is definite and unequivocally shows cancellation will take effect at the expiration of prescribed period).

The above cited sources reveal that a declination or cancellation notice must be communicated clearly enough to the insured or applicant so that he or she under-

---

**3.** *See also Prince v. Western Empire Life Ins. Co.,* 19 Utah 2d 174, 428 P.2d 163, 167 (1967) (no notice of rejection to insured and no return of premium meant policy in effect at time of death). The *Smith* case, relied upon by the trial court, also articulated this general rule: "the most frequently stated rule appears to be that a temporary contract of insurance is terminated by rejection of the application and notice thereof to the insured," 539 P.2d at 439 (citing 9 Couch on Insurance, § 39:207, at 653 (2d ed. 1962)).

**4.** Various sections of the Utah Insurance Code, for example, are instructional in determining how insurance policies other than temporary life insurance contracts may be cancelled by the insurer or the insured. Termination of many insurance policies is governed by Utah Code Ann. § 31A–21–303 (Supp.1991). That section provides that cancellation is effective only after the delivery or first class mailing of a written notice to the policy holder. Utah Code Ann. § 31A–21–303(2)(b) (Supp.1991) (explicitly excluding applicability to life and disability insurance, *see, e.g.,* § 31A–21–303(1)(a)).

Similarly, under § 31A–22–423 (1991), the section that deals with examination periods for life insurance policies, the policy owner may return the policy within ten days after its delivery. "Return" is explicitly defined in that section to mean "delivery to the insurer or its agent, or mailing the policy to either, properly addressed and stamped for first class handling, with a written statement on the policy or an accompanying writing that it is being returned for termination of coverage." *See also* Martin J. McMahon, Annotation, *Actual Receipt of Cancellation Notice Mailed by Insurer as Prerequisite to Cancellation of Insurance,* 40 A.L.R. 4th 867, 876–77 (1985) (overview of methods by which insurance policies can be effectively cancelled).

stands that the insurance coverage is no longer effective. To be sufficient, the notice must be definite and certain, and leave no doubt in the mind of the recipient that the rejection of insurance is effective upon receipt of the notice. The only evidence First Colony puts forth concerning the manner of communicating declination is Maurine Stevenson's deposition and her responses to interrogatories. This evidence reveals only that someone at Talbert Corporation informed Maurine Stevenson orally over the telephone that First Colony had declined the application. The phone call was initiated by Maurine Stevenson, who was concerned that her husband had not received the policy. Neither of the Stevensons ever spoke directly to anyone from First Colony. First Colony does not claim to know who from their office made the communication, or to whom at Talbert Corporation it was made. We disagree with First Colony's contention that a phone call made by an unidentified agent of First Colony, to an unidentified person other than Stevenson, the applicant, which allegedly communicated First Colony's decision to decline Stevenson's application, was adequate notice. In addition, there is no evidence in the record concerning the contents of the communication. No effective date of termination of the temporary insurance was given and there was no indication when the premium payment would be returned.

In sum, we hold that notice must be clearly and unequivocally communicated to the applicant in an unambiguous manner. In the case before us, we cannot say that First Colony effectively dispatched notice to Stevenson that his temporary insurance was terminated.

## AMOUNT OF JUDGMENT

Both parties have claimed error in the amount of damages awarded to Maurine Stevenson. Maurine Stevenson appeals the trial court's entry of judgment for $300,-000, claiming it was too low; First Colony appeals, claiming the amount was too high.

Maurine Stevenson urges us to hold as a matter of law that the life insurance application and conditional receipt are ambiguous, and that any uncertainty or ambiguity in the terms should be construed in favor of the insured. While this is true, it is also true that in determining the intent of this contract, we examine the language of the contract itself first, "and unless there is some ambiguity or uncertainty, there is no justification for attempting to vary it by extrinsic or parol evidence." *Williams v. First Colony Life Ins. Co.,* 593 P.2d 534, 536 (Utah 1979). The trial court did not find the insurance contract to be ambiguous and neither do we.[5] *See id.* (supreme court finds similar contract to be unambiguous).

We agree with the trial court, that as a matter of law the amount of temporary

---

**5.** First Colony argues that the trial court failed to take into consideration factual evidence which indicated that the amount of insurance created by the issuance of the conditional receipt was limited to $250,000. The evidence upon which First Colony relies is contained in two affidavits. The affidavit of Leonard Reynolds, Executive Vice President of United Underwriters states that it is the standard practice of the insurance industry not to issue a conditional receipt for an amount exceeding $250,000. An exhibit attached to the affidavit of Loretta Stacey, an employee of First Colony, indicates that United Underwriters advised Talbert Corporation that coverage could not exceed $250,000, and that Stevenson agreed to drop the amount of conditional coverage to $250,000. This exhibit, a memo to the file of Stevenson, was prepared on May 5, 1987, seven months after Stevenson died, and eleven months after the insurance policy application had been complet-

ed. Nowhere else in the record is there any evidence supporting these contentions. No evidence has been produced which indicates who spoke with Stevenson regarding any aspect of the conditional receipt, let alone the limitation on the amount of coverage.

When the trial court determined that the written documents were clear and unambiguous regarding the amount of coverage then in force, it did not need to consider evidence which was extrinsic to the writings. First Colony argues that the $300,000 limitation of the conditional receipt is clear and unambiguous and we agree. Because we agree with First Colony's contention on this point, we are not persuaded by their argument that this written limitation of $300,-000 was orally modified by a phone call that allegedly took place between an unknown representative of United Underwriters or Talbert Corporation and Stevenson.

insurance in effect at the time of Stevenson's death was $300,000, the amount printed on the conditional receipt, and not $500,000, the amount requested in the application.

## CONCLUSION

We affirm the trial court's summary judgment in favor of Maurine Stevenson, and the judgment for $300,000.

BILLINGS and RUSSON, JJ., concur.