284 P.2d 695

Anna Louise GREEN, individually and as administratrix of the estate of Delbert O. Green, deceased, Plaintiff and Appellant,

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant and Respondent.

No. 8266.

Supreme Court of Utah.

June 10, 1955.

Ramon M. Child, Child & Spafford, Robert B. Hanson, Salt Lake City, for appellant.

Hurd & Hurd, Salt Lake City, for respondent.

WORTHEN, Justice.

Appeal from a judgment by the lower court sitting without a jury.

The following facts were stipulated to by the parties:

"On November 20, 1952, Delbert O. Green, deceased, husband of plaintiff, applied to the defendant for a mortgage

loan in the amount of $4500.00 on his home at 2133 East Crystal Avenue, Salt Lake City, Utah, said loan to be made on what the defendant calls its AHO or Assured Home Ownership Plan. As an incident to such loan, all applicants apply for and secure life insurance coverage from the defendant in a face amount equal to the amount of the loan applied for, which insurance may be of such type and on such a plan as the applicant desires. (Exhibit 1.) Delbert O. Green on November 20, 1952, as a part of his mortgage loan application, applied for a policy of life insurance on the ordinary life plan in the face amount of $4500.00, the policy to become effective on January 1, 1953, with preliminary term insurance from the date of the application to the effective date of the permanent policy. (Exhibit 2.) The temporary receipt referred to in the application is attached thereto as Exhibit 2–A. This receipt was never delivered to the applicant. On the same day and concurrently with the application, Delbert O. Green executed what is called a 'Temporary Agreement' (Exhibit 3) agreeing to pay $29.07 which was the amount of the first monthly premium on the proposed insurance policy plus $9.36 on account of the premium for the preliminary term insurance. Said 'Temporary Agreement' was on a mimeographed form prepared

by the defendant. On or before December 1, the applicant paid the sum of $29.07 to the Defendant's agent. On December 2, 1952, Delbert O. Green was notified that the mortgage loan portion of his application had been tentatively approved. (Exhibit 4.)

"The following is a complete chronological sequence of the events as they relate to the life insurance portion of the application:

"The application Part I, dated November 20, 1952; the application Part II (medical) dated November 22, 1952 (Exhibit 5); report of additional medical examination dated November 25 (Exhibit 6); request for additional medical information dated December 2, 1952 (Exhibit 7); report of additional medical examination dated December 6, 1952 (Exhibit 8); report from applicant's own doctor with electrocardiograph attached, dated December 9 (Exhibit 9) forwarded to New York on December 11, 1952 (Exhibit 10); death of applicant occurred on December 28, 1952; a policy was prepared by the policy-issuing department on December 29, containing a 'C' rating and providing for a monthly premium of $24.62 per month (Exhibit 11); wire inquiring as to whether applicant was covered, dated December 29 (Exhibit 12); form letter advising of rated policy dated December 31 (Exhibit 13); refund of the premium

paid, in the amount of $29.07 was tendered to the plaintiff and refused (Exhibit 14) and the defendant has again tendered refund of the premium, together with interest thereon by paying the same to the Clerk of the Court."

At the conclusion of the hearing the court made and entered findings of fact, conclusions of law and judgment. Appellant assigns error as follows:

"1. The court erred in its finding of fact 'That the application provided that the insurance applied for should not become effective until satisfactory proof of insurability was furnished to the defendant's home office in New York City.'

"2. The court erred in giving undue consideration and weight to the so-called binding receipt.

"3. The court erred in failing to find a preliminary contract of temporary insurance.

"4. The court erred in concluding as a matter of law that the insurance application was rejected- by the respondent and in a due and timely manner.

"5. The court erred in failing to enter a finding of fact on the issue of representation on the part of respondent's agent."

■ This being a law action the question is not whether the evidence would have supported a judgment in favor of appellant but whether the judgment entered by the trial court finds support in the evidence.[1]

■ The trial judge saw and heard the witnesses and was in a better position than we to properly evaluate it and to pass on their credibility.

By way of amplification of the agreed stipulation of facts the following additional facts should be disclosed.

The application for insurance identified as Exhibit 2 was the ordinary form and contained the following conditions:

"(a) It is hereby agreed that any policy issued hereon shall not take effect until the first premium *thereunder* has been paid *during my good health;* that no agent or other person except the President, a Vice-President, the Secretary, the Treasurer, a Registrar or an Assistant Registrar of the Society has power to make or modify any contract on behalf of the Society or to waive any of the Society's rights or requirements, and that no waiver shall be valid unless in writing and signed by one of the foregoing officers. All of the foregoing statements and all those contained in Part II hereof are true, full and complete, and are offered to the Society as an inducement to issue the policy or policies for which application

1. Buckley v. Cox, Utah, 247 P.2d 277.

**378**

is hereby made." (Part II was the medical examination.)

"(b) I have paid ———— to ———— to cover ———— on the policy applied for above in accordance *with the provisions of the receipt of date and number corresponding to this application, which is hereby accepted subject to the conditions thereof.* * * *" (Emphasis ours.)

The receipt of date and number corresponding to the application was identified as Exhibit 2–A. It was attached at the bottom to the application. The number on the application appeared in lower right hand corner and the number on the receipt was in the upper right hand corner thereof. The receipt provided:

"Received of ———— No. 747545 ———— dollars, to cover ———— on proposed insurance for $———— on the life of ———— for which Part I of an application bearing a corresponding number as above is this day made to The Equitable Life Assurance Society of the United States. Insurance, subject to the terms and conditions of the policy contract, *shall take effect* as of *the date of this receipt, provided satisfactory Part II of the application is furnished* to the Society and provided the person whose life is proposed for insurance *is on this* date, *in the opinion of the Society's authorized officers in New York, an insurable risk under its rules* and the application is otherwise acceptable on the plan and for the amount and at the rate of premium applied for; *otherwise the payment evidenced by this receipt shall be returned on demand and upon the surrender of this receipt.*" (Italics ours.)

"Dated at ————, ———— 19—, ————, Agent."

At the time Delbert O. Green made application he signed a temporary agreement whereby he agreed to pay to defendant on or before December 1, 1952, $29.07. The temporary agreement provided:

"This agreement is given in lieu of cash payment to put insurance in force, or to start interest on annuity as of date above, *in accordance with receipt attached to application.*" (Italics ours.)

The parties are in agreement on most of the facts and the principal dispute involves the temporary agreement and the rights of Delbert O. Green under what is referred to as temporary term.

Appellant's assignments of error all center about the temporary agreement and the rulings of the court with respect to the same.

Appellant contends that Delbert O. Green applied for and paid for a policy of preliminary term insurance covering the period from November 20, 1952, and the effective date of the ordinary life policy

January 1, 1953, and that such insurance was in effect when he died.

This case must be resolved on the basic principles of contract. If the applicant had applied for preliminary term coverage, and if defendant had accepted the premium and if the defendant waived all questions of insurability and waived the approval of its medical officers in New York then the defendant should be bound by its bargain.

On the other hand if the defendant by the documents presented to the trial court and by the testimony of its agents agreed to cover Delbert O. Green under the preliminary term only if he was *insurably sound and* was in the opinion of defendant's authorized officers in New York an *insurable risk* under its rules and under the application presented, the defendant should not be bound by a contemplated contract which never took effect.

Delbert O. Green was interested in obtaining an Assured Home Owners Loan from defendant. Such a loan was applied for by decedent. As indicated by the stipulated facts the applicant was required to provide life insurance *in full force and effect* issued by defendant in the amount of the loan.

The evidence establishes that Delbert O. Green made application for both the loan and the insurance on November 20, 1952. On the same day he executed the temporary agreement which provided that it was "to put the insurance in force * * *

in accordance with receipt attached to application."

Appellant's principal assignment of error assails the trial court's finding that the application provided that the insurance applied for should not become effective until satisfactory proof of insurability was furnished to defendant's home office in New York City.

Appellant takes the position that a separate policy of insurance (preliminary term) was contemplated covering the period from November 20, 1952, when the application for the ordinary life was applied for to the date the same became effective, January 1, 1953.

We are of the opinion that the exhibits before the trial court and the testimony warrants no such conclusion.

Counsel for appellant observe that Delbert O. Green was required by respondent's agent to pay an additional $9.36 for preliminary term insurance to January 1, 1953. Appellant testified that respondent's agent told them that the signing of the temporary agreement on November 20, 1952, would provide immediate protection.

The respondent's agent who took the application for the insurance denied the testimony of plaintiff. Plaintiff testified at the taking of her deposition that she knew they *would not get any insurance* unless her husband passed a satisfactory physical examination; that the agents of defendant told her husband that Mr. Green

would have to pass a physical examination; that they understood from what defendant's agents told them that, "whether or not he would be insured depended on whether his physical examination was satisfactory."

The agent for defendant testified on cross-examination that he told plaintiff's husband that "The Company requires we set up preliminary term insurance during the month and plus one month before regular insurance starts. The purpose of this is, in this particular plan, there is a mortgage loan that has to be made in connection with it, and we need sometime to negotiate this loan. * * * *I told them that that was the way we did it, and that was the company rule, and that was the way we had to do it, * * *." He further testified: "Well, the receipt says he is insured, providing he passes satisfactory Part 2; now, Part 2 is the physical examination, so, if he passes that, why he is accepted as of the date of the application."

Counsel complained that the charge of $9.36 for preliminary term for 40 days until the effective date of the ordinary life policy was unfair and misleading and that they received no value for it.

If however plaintiff in order to obtain the Assured Home Owners Loan voluntarily met the requirement of defendant he may not now complain. But let us examine the situation. Assume that the physical examination of Delbert O. Green had disclosed him to be an insurable risk—assume

that on December 22, the Company physician in New York had approved the issuance of a policy instead of declining to approve it then plaintiff's husband would have been insured at the time of his death.

Nor are we able to agree with appellant that two policies of insurance were contemplated, one covering preliminary term for 40 days and one covering the ordinary life. The stipulated facts would indicate otherwise as would the application. By the application Delbert O. Green applied for "an insurance policy", not two.

Further the application signed by Mr. Green contained the provision:

"It is agreed that *any policy* issued hereon shall not take effect until the first premium *thereunder has been paid during my good health*."

The application over the signature of Delbert O. Green stated that no salesman could make or modify any contract for the defendant.

Appellant testified that she had read the reference in the application to the *"receipt"* but didn't ask about what it meant.

That receipt was not ambiguous; it specifically stated that the insurance should take effect on November 20, 1952, provided a satisfactory medical examination was furnished to the defendant and provided the applicant, in the opinion of the defendant's medical officers in New York was an insurable risk, *otherwise* the $29.07 paid to cover both the premium for January,

1953, and for preliminary term were to be returned.

The amount which was charged for preliminary term was to be returned if the applicant was not an insurable risk. Had defendant undertaken to insure Delbert O. Green for the 40-day period from November 20, 1952, to January 1, 1953, regardless, it would not have agreed to return the premium paid if he failed to qualify.

It was stipulated that on December 2, 1952, Delbert O. Green was notified that the mortgage loan portion of his application had been tentatively approved. (Exhibit 4.)

That exhibit contained the following:

"We are pleased to advise you that your application for a mortgage under the Assured Home Ownership Plan in the amount of $4500.00, for a term of 192 months with interest at 4% has been *approved subject to insurability* and satisfactory credit." (Italics ours.)

It appears to us as to the trial court that at the time the notice was received that he did not question that the policy was conditioned on his insurability.

It appears that Delbert O. Green was not in sound or good health on November 22, when he appeared for his medical examination.

Certainly defendant should not be required to respond with the proceeds of a policy that it never agreed to issue.

The testimony of defendant's medical officer disclosed that the medical examination showed that Delbert O. Green had an elevated blood pressure and a high pulse. Immediately after December 2, defendant's medical officer called for (a) a second blood pressure reading, a second pulse reading, a physician's certificate and a certificate from applicant's attending physician together with a loan of the electrocardiogram mentioned in the medical examination.

Defendant's medical officer called for considerable additional information both from the doctor who examined the applicant as well as Mr. Green's attending physician. There is no evidence that applicant, during the time further information as to his physical condition was being obtained, ever suggested or contended that he had coverage and that his physical condition was immaterial.

On December 22, 1952, after the further information had been received and considered, the medical officer of defendant gave Delbert O. Green a medical rating (of "175") which signifies that the application was not approved and that he was not a standard risk; the officer testified that the basis for the rating was the applicant's *elevated blood pressure* and *rapid pulse* which had been disclosed on the original examiner's report and on the supplemental report; that in view of the elevated blood pressure and rapid pulse and of the applicant's medical history the applicant

was given a numerical rating of 175 which meant that the application was declined as applied for; that in accordance with the Company practice a substandard policy was to be offered in lieu of the policy applied for, subject to his acceptance of the substandard insurance *and subject also to his making application* therefor under an application for the policy and payment of a rated up premium.

The policy was prepared and defendant's Salt Lake City office was notified to inform Delbert O. Green to apply for the new policy at the new premium and if he declined to accept it to refund the $29.07 collected from Mr. Green on November 20, 1952.

Defendant further advised that the premium on the substandard policy which had been prepared for Mr. Green would require an initial payment of $39.38 which included $14.76 to cover preliminary term from *December 22, 1952,* to *February 1, 1953,* and $24.62 to cover insurance premium for month of February, 1953.

Before the new policy and amended application was prepared and sent to defendant's Salt Lake City office for delivery, Delbert O. Green died.

What we have said herein disposes of all assignments of error which assignments we hold are not well taken.

Judgment affirmed. Costs to respondent.

McDONOUGH, C. J., and HENRIOD, CROCKETT and WADE, JJ., concur.