# Steelnack *v.* Knights Life Insurance Company of America, Appellant.

Argued September 27, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Christ. C. Walthour, Jr.,* with him *Kunkle, Walthour and Garland,* for appellant.

*Richmond H. Ferguson,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 15, 1966:

On April 16 or 17, 1962, the Knights Life Insurance Company of America, now American General Life Insurance of Delaware, solicited and received from Glenn A. Steelnack an application for life insurance in the total face amount of $2,000, with triple indemnity provisions in the event of accidental death, the insurance to be effective through two non-medical $1,000 policies.

Steelnack paid the insurance company $13.28 and received a binding receipt which assured him he was covered. A representative of the insurance company later informed Steelnack that he could obtain a $5,000 policy with accident double indemnity at the same premium rate he was paying for the two $1,000 policies. On April 23, 1962, in response to this solicitation, Steelnack applied for a non-medical policy in the amount of $5,000, this to be issued in lieu of the two $1,000 policies. The premium paid on the two smaller policies was now made applicable to the premium on the $5,000 policy.

The main office of the insurance company asked that the insured take a medical examination but before a mutually convenient date could be arranged for the examination, Steelnack was killed in an automobile accident. The insured's widow applied for payment on her husband's policies, but payment was refused on the basis that the request for the medical examination terminated the company's liability until the medical examination was completed and the applicant found insurable.

The widow instituted suit for recovery under the terms of the $5,000 policy, or, in the alternative, the two $1,000 policies. The court below held she was entitled to recover $10,000 under the double indemnity provision of the $5,000 policy. The insurance company appealed.

The binder submitted to the insured both with respect to the $1,000 policies and the $5,000 policy states: "First: If a full first premium . . . has been paid at the time of making such application and declaration of such payment is made therein, the insurance, subject to the terms and conditions of the policy contract applied for and in use by the Company at this date, *shall take effect on the date hereof provided*: (1) a later effective date is not requested in the application, Part One; (2) the application is completed as agreed therein; (3) the applicant is on this date a risk acceptable to the Company under its rules, limits and standards, on the plan and for the amount applied for and at the rate of premium declared paid; and (4) the applicant is on this date in good health; otherwise, the payment evidenced hereby shall be returned upon demand and surrender of this receipt." (Emphasis supplied.)

Nothing in the above language indicates that the insurance coverage was to be delayed until the medical examination took place and the insured was found to be in good health. In fact, the opposite is implicit therein, namely, that the coverage began on the date of the binder subject to being terminated if the medical examination revealed the insured not in good health.

In point of pragmatic realism, the state of Steelnack's health was irrelevant since he was killed in an automobile accident. Even if he had been a healthy combination of Atlas, Hercules and Jim Thorpe, he could scarcely survive the fatal effects of the automobile crash which snuffed out his life.

In view of the fact that the insurance company had substituted the $5,000 policy for the two $1,000 policies, for which no medical examinations were necessary, and for which binders were issued, and the coverage was to begin with the effective date of the binders, the company could not leave the insured wholly unprotected after withdrawing the original policies, without notify-

ing him to that effect. The company gave the insured no such notification.

At best, the requested medical examination could only be a condition subsequent, which could terminate the insurance coverage in the event the company found the insured's health to be such that it could refuse to take him even as an accident risk. All this, of course, is hypothetical and could in no way adversely affect the insured's rights which began immediately with the receipt of the the company's binders.

If the insurance company had wished to make the taking of a medical examination a condition precedent to the contract, it should have done so with explicit language. It did not do so.

Judgment affirmed.

Mr. Justice JONES concurs in the result.