507 P.2d 375

**Ida LONG, Plaintiff and Appellant,**

v.

**UNITED BENEFIT LIFE INSURANCE COMPANY, INCORPORATED, Defendant and Respondent.**

No. 12844.

Supreme Court of Utah.

March 8, 1973.

Mark S. Miner, Salt Lake City, for plaintiff-appellant.

James Faust, Salt Lake City, for defendant-respondent.

CALLISTER, Chief Justice:

Plaintiff, as beneficiary, initiated this action to recover the proceeds from an insurance contract, which she claimed was in full force and effect at the time of the death of her husband, the insured. The trial court, after submitting special interrogatories to the jury, granted defendant's motion for a directed verdict and rendered a judgment of no cause of action in defendant's favor. Plaintiff appeals therefrom.

On June 16, 1970, insurance agents McKensie and Hulick, representing United Benefit Life Insurance Company, called upon Harry W. Long, in response to an inquiry card he had sent to Mutual of Omaha, the parent company of United. According to the testimony adduced at the trial, Mr. Long was contemplating a trip and desired life insurance to protect his family. The plan suggested was a mortgage protection policy for $11,000 with an additional $2,000 life insurance. The agents filled out an application form; Mr. Long answered the questions and signed it. Mr. Long made out two checks, each in the amount of $13.83; one was currently dated and was cashed immediately; the other was postdated to July 10, 1970. The second check was given because Mr. Long executed a bank service plan agreement whereby the monthly premium would be deducted from his checking account and sent directly to the insurance company.

Under the company rules, the agents were to collect two monthly premiums when an insured subscribed to the bank service agreement.

The jury in response to special interrogatories found that the agents informed Mr. Long at the time he completed and signed the application that he was insured from then on, until the application was thereafter accepted or denied by the company. The jury further found that the agents detached and delivered the receipt attached to the application, although the actual receipt was never located.

On July 3, 1970, Mr. Long sustained fatal injuries in an automobile accident. On July 6, 1970, after being apprised of Mr. Long's demise, the local agents attempted to refund the premium payments to Mrs. Long. The agents testified that on that date they observed in the local office a letter from the home office rejecting Mr. Long's application for "confidential reasons." Mrs. Long refused the tender and initiated this action. There was no evidence presented to indicate that Mr. Long was not in good health and insurable. The position of the company was that it may refuse to issue a policy of insurance for any reason.

The application provided that if the first premium were paid in full, as evidenced by the conditional receipt bearing the same numbers as the application, the liability of

the company should be as stated in the conditional receipt.

The specimen in evidence indicates that the document delivered to an applicant is labeled receipt, the term "conditional" does not appear therein. The face of the receipt provides:

Received of ——————— the sum of $——————— which amount is the full first premium for insurance applied for to the United Benefit Company in an application bearing the same number and date as the receipt.

The insurance applied for shall be effective on the date of application or the date of any medical examination required by the Company, whichever is the later, subject to the requirements stated on the reverse side of this receipt.

If the application is not approved, full refund of premium will be made on surrender of this receipt. If you are not advised regarding the application within 60 days, please notify the Company at its Home Office in Omaha, Nebraska.

The reverse side of the receipt provides:

Requirements For Insurance To Become Effective.

Insurance will be effective as stated in this receipt provided that:

1. The proposed insured . . . is determined by the Company at the Home Office in Omaha, Nebraska to be insurable, in accordance with its usual rules and practices, on the basis and for the policy applied for, effective on the date of application or the date of any medical examination required by the Company, whichever is the later;

2. The full first premium is paid in cash on the date of application;

3. The policy is issued exactly as applied for within 60 days from the date of application;

4. The total life insurance in force with the Company on the proposed insured, including the amount now applied for, will not exceed $125,000.

Defendants prevailed in the trial court on the ground that the application was merely an offer for a contract, which was unconditionally rejected within a reasonable time prior to applicant's death; and, therefore, no insurance contract came into being. On appeal, plaintiff contends that where an applicant has completed and submitted an application and paid the premium, and a receipt is issued, which provides that the effective date of the insurance is the date of the application (no medical examination was required in the instant case), a contract of insurance is created. Thereafter, an insurance company cannot terminate the coverage by rejection after the death of the applicant.

This court has never previously specifically determined the legal effect of a bind-

ing receipt, i. e., after an applicant has completed the application, paid the first premium, and has been issued a receipt, does a contract of temporary or interim insurance arise, subject to the right of the company to terminate the agreement subsequently if it concludes the applicant is not acceptable; or must the company be satisfied as to the applicant's acceptability, as a condition precedent to the existence of any contract?[1]

In Service v. Pyramid Life Insurance Company,[2] the court in a scholarly opinion reviewed the case law and held that the language of the receipt in issue indicated an intention to create temporary insurance coverage for the time during which the approval of the application was pending. The receipt provided that it was made and accepted subject to certain specified conditions, one of which was that if the company at its home office, after investigation, should be satisfied that on the date of the application or the date of the medical examination the person proposed for the insurance was insurable, the insurance protection should take effect from the date of the application or the date of such medical examination, whichever was later.

In the course of its opinion the court explained that historically it was the practice of many insurance companies to state in their applications that the contract of insurance was not effective until the application had been approved by the company, the first premium paid by the applicant, and the policy delivered. In the intervening period between the signing of the application by the applicant and the delivery of the policy, no money had been advanced to the company, and no insurance was in effect. This interval, which might last several weeks, was undesirable to both the insurer and the applicant. The disadvantage to the applicant was that he was not covered by insurance during this period. The disadvantage to the insurer was that the applicant had the power to revoke his offer made in the application, either because he chose not to carry insurance or to purchase it from a rival company. In either such event, the company lost what it had expended for the investigation and medical examination of the applicant, in addition to the loss of business. To alleviate this situation the companies initiated the practice of issuing binding or conditional receipts, which usually contained a

---

1. However, in Prince v. Western Empire Life Insurance Company, 19 Utah 2d 174, 179, 428 P.2d 163, 167 (1967), this court stated: " . . . in a number of cases, mostly of more recent origin, it has been held that a binding receipt stating that the insurance shall be in force from a certain date provided the application is approved and accepted at the home office

is effective in providing protection to the applicant until the application is approved on the ground of an assumed intention of the parties to this effect . . . . "

2. 201 Kan. 196, 440 P.2d 944, 956–960 (1968).

provision to the effect that the insurance should be considered as in force from the date of the receipt, or the date of the medical examination, provided that the application was approved and accepted at the home office of the insurer.

The court stated that the issuance of these binding receipts did away with the disadvantage threatening the insurer. The applicant to whom the receipt was issued felt contractually obligated to perform, and it served to give the insurer the use of the premium money at the earliest date possible. It further offered a selling point of which no agent failed to make the utmost in his talks with prospective clients.

The court observed that in those cases where it has been determined that the legal effect of the receipt was to create temporary insurance, two principles have been cited: (1) that where there are ambiguous or conflicting recitals as to the time when the insurance becomes effective, the conflict is resolved against the insurer; and (2) that considerations of public policy make it fundamentally unfair for an insurer to collect a premium while providing no coverage for the period reserved by the insurer to consider and act upon the application.

The court declared that the purpose of the clause stating that the insurance should take effect "on the date hereof, or on the date of the medical examination for such insurance" was to provide an inducement for the payment by the applicant of the first premium in advance, and to give preliminary protection to the insured until the issuance of the policy. This preliminary agreement entered into by the parties was for their mutual benefit and avoided the aforementioned disadvantages pending delivery of a policy.

The court stated: [3]

Many cases in the courts indicate a trend to construe the conditions liberally, and to treat receipts similar in wording to the one before us as binding during the interim regardless of the ultimate action of the insurance carrier on the application. These decisions are based upon the assurance that if the receipt meant anything, no other result could have been intended by the parties, for unless the insured was to be protected against death during the interim period there would be no advantage to him in paying his premium in advance. If the company did not intend that there should be insurance effective pending the date of the application, or medical, as in this case, and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual

3. At p. 959 of 440 P.2d.

insurance would be as many days less than one year as there were days intervening between the date of the application and the approval. In other words, the insured would be paying for something which he did not receive. [Citation]

The court stated that if the receipt did not afford the applicant coverage until a formal policy was issued or the risk declined by the insurance company, then the receipt was ambiguous and should be construed against the insurance company, the party who drew it up and issued it upon its printed form by its agents.

The court explained:[4]

If there was to be no contract of insurance in any event until the application was approved, and a policy issued thereon, it would seem entirely immaterial to the insured whether the contract related back to the date of the application (or medical) or not. If he lived until the application was approved and a policy issued, it would seem to be a matter of indifference to him whether he had been insured during the interim between the date of the application and the date of the issuance of the policy. On the other hand, if he died before the application was approved and the policy issued, his beneficiary would derive no benefit from the insurance. The chief object of the provision would, therefore, seem to be to enable the insurance company to collect premiums for a period during which there was in fact no insurance, and consequently no risk. [Citation]

Under authorities which hold temporary insurance to be in effect, the conditions imposed by the receipt would be treated as conditions subsequent. The company was bound to act either affirmatively or negatively on the application. The insured, if an acceptable risk, was entitled to a policy. If he was not acceptable, the insurance company was required to so notify him, and return the premium paid, or if rated up, notify him by tendering an application at the higher rate. On the facts in the instant case the insured was never notified during his life that his application was accepted, rejected, or that it would be considered at a higher premium. Here the money for the first premium was retained by his insurance company until after the insured's death, when tender was made to his beneficiary for a return of the premium which she rejected. [Citations]

Where the provisions in a binding receipt are construed as providing temporary insurance protection until such time as the insurer has considered the application and announced its determination

4. 440 P.2d at pp. 959–969.

to accept or reject the risk, the insurer cannot terminate the risk so assumed unless the insured is notified in his lifetime that his application was rejected. [Citations] [5]

The cases cited in this opinion appear to be the judicial response to the following editorial comment in 2 A.L.R.2d 943, Anno: Temporary Insurance, Sec. 38, p. 1021:

How this situation can be remedied fairly and satisfactorily to both parties is a question not yet answered. According to one text writer a satisfactory solution can be reached only by the open recognition that the sensible intentions and expectations of the negotiators themselves, and not the unilaterally drawn wording of the binder and policy, should be controlling. The applicant who pays his premium expects to be protected immediately, and is customarily led to believe so by the agent. Since the effective date is said to be the date of the application once home office approval is given, but the applicant is not covered until the application is approved, the applicant is actually paying for a period during which he may not be covered. A recognition of the inequity of this result will, according to this view, enable courts more easily to conclude that, regardless of the wording of the binding receipt, the agreement between the insurer and the applicant contemplated temporary coverage, pending final action by the insurance company . . . .

In the instant action, the receipt, which the jury found was in fact issued to the applicant, Mr. Long, created temporary insurance coverage until such time as the insurers had considered the application and determined to issue a policy or reject the risk. Thereafter, the insurer cannot terminate the risk so assumed unless the insured is notified during his lifetime that his application was rejected. The facts are undisputed that Mr. Long did not receive notice of the company's rejection; and, therefore, the company is liable to the beneficiary, Mrs. Long. The judgment of the trial court is reversed, and this cause is remanded with an order to enter judgment for the plaintiff. Costs are awarded to plaintiff.

---

5. The following cases hold that a receipt such as appears in the instant case provides temporary or interim insurance subject to a condition subsequent: Steelnack v. Knights Life Insurance Co., 423 Pa. 205, 223 A.2d 734 (1966); Toevs v. Western Farm Bureau Life Insurance Co., 94 Idaho 151, 483 P.2d 682 (1971); Gaunt v. John Hancock Mutual Life Insurance Co. (2nd Cir. 1947), 160 F.2d 599; Farmers New World Life Insurance Co. v. Crites, 29 Colo.App. 394, 487 P.2d 608 (1971); Allen v. Metropolitan Life Insur. Co., 44 N.J. 294, 208 A.2d 638 (1965); Slobojan v. Western Travelers Life Insur. Co., 70 Cal.2d 432, 74 Cal.Rptr. 895, 450 P.2d 271 (1969); Prudential Insurance Company of America v. Lamme, 83 Nev. 146, 425 P.2d 346 (1967).

TUCKETT, J., concurs.

CROCKETT, Justice (concurring specially).

I concur in the decision and in the holding that under the facts of this case the contract of insurance should be deemed to be in force. This is so because the stated position of the defendant company; that it could and did reject the insurance *without cause or reason* therefor, is unsound.

However, I think the statement in the third to last sentence in the main opinion that

> . . . the insurer cannot terminate the risk so assumed unless the insured is notified during his lifetime that his application was rejected

is too all-inclusive a rule which could be applied under other circumstances to work injustice, and that such a policy could produce undesirable results in the insurance business. It may well have the effect of dissuading insurance companies from committing coverage at the time of receiving an application and the premium, depriving themselves of this favorable aspect of business, and the public of the advantages of such immediate coverage, which should be available in normal circumstances. Consequently, I think it should be stated in connection with this decision that there are reasons why it is desirable and beneficial, both to the insurance company and its customers that under ordinary circumstances it should be able to commit insurance as being in effect upon receiving the application and the premium, but with the understanding that the insurance is not effective if circumstances exist which justify its avoidance.

In order to accomplish the above-stated salutary objective, the insurance company should be able to reject insurance if in its investigation, or in the medical examination, it is found that there exists some sound reason, known to the applicant but not to the insurance company, why he was not insurable, and notice of rejection is promptly given, whether that happens to be in the lifetime of the insured or not. E. g., if the insured had a fatal disease, or some affliction which would make him uninsurable, and which fact was concealed from the insurance company, or where there has been any kind of fraud of deception practiced which would make the insurance contract void or voidable. On this subject generally see discussion and authorities cited in Prince v. Western Empire Life Ins. Co., footnote 1, main opinion; and also Green v. Equitable Life Assurance Society, 3 Utah 2d 375, 284 P.2d 695; Winger v. Gem State Mutual, etc., 22 Utah 2d 132, 449 P.2d 982; Burnham v. Bankers Life & Cas. Co., 24 Utah 2d 277, 470 P.2d 261.

This problem was dealt with and an important distinction pointed out in our recent case of Moore v. Prudential Ins. Co., 26 Utah 2d 430, 491 P.2d 227. The insured

died of a heart attack. The company sought to avoid liability on the ground that he had "catalepsy," which he had failed to disclose in answers on the application. We plainly indicated that if the concealment had been of something causally related to his death, he would not have been covered, but inasmuch as the catalepsy was not related to the cause of death, the company had no sound reason for rejecting the insurance. In the instant case the insurance company did not state a basis for rejecting the insurance, material or otherwise, but took the position that it could disclaim coverage without giving any reason at all. As stated at the outset, I cannot agree with that position, and I therefore concur in the decision directing judgment for plaintiff.

ELLETT, J., concurs in the concurring opinion of CROCKETT, J.

HENRIOD, Justice (concurring in the result).

I concur only in the result. I am of the opinion that the evidence justifies the result on the grounds that the carrier in sending out agents with ostensible authority to bind it to the terms of a policy representing recoverable benefits, and accepted, and cashed a check for the first premium, is bound by the agent's representations,— obviously made within the scope of his authority, express or implied. After this, it seems that the main opinion employs and emphasizes an apologia that need not be indulged.