Anjanette ALLEMAN, by her Guardian
Ad Litem Duane Alleman,
Plaintiff-Appellant,

v.

LINCOLN NATIONAL LIFE
INSURANCE COMPANY,
Defendant-Appellee.

No. 79–1321.

United States Court of Appeals,
Tenth Circuit.

Jan. 12, 1981.

Anthony M. Thurber, Salt Lake City, Utah, for plaintiff-appellant.

Charles B. Casper, Salt Lake City, Utah (Warren Patten, Salt Lake City, Utah, with him on the brief), of Fabian & Clendenin, Salt Lake City, Utah, for defendant-appellee.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

McWILLIAMS, Circuit Judge.

This is an action based on a policy of life insurance. Jurisdiction is based on diversity. The named beneficiary in the policy brought suit against the insurance company in a Utah state court. The company caused the action to be removed to federal court. On the basis of his interpretation of a Utah statute, the district judge entered summary judgment in favor of the insurance company. The beneficiary appeals. We affirm.

Anjanette Alleman is a minor daughter of Duane and Linda Alleman. The Allemans were divorced and, at the time of her death, Linda Alleman was engaged to marry James Hall, an insurance agent for Lincoln National Life Insurance Company. Hall suggested to Linda Alleman that she purchase a policy of life insurance from Lincoln National Life for the protection of her minor daughter, Anjanette. Hall filled out an application form and a so-called "binding receipt," which included family information and health history which he obtained from Linda Alleman. However, Linda Alleman did not sign any of the forms. When asked to do so, she put Hall off with such comment as she would sign them later. Similar conversations occurred on several occasions.

At about this time Hall, Linda Alleman, and her daughter Anjanette motored to California. While in California Linda Alleman was killed in an automobile accident. When Hall returned to Utah, he forwarded the policy to Lincoln National Life, together with the monthly premium. Lincoln National Life declined to recognize the policy, whereupon Anjanette Alleman, by her father, Duane Alleman, instituted the present action against Lincoln National Life. After discovery, which included a lengthy deposition by James Hall, Lincoln National Life moved for summary judgment. This motion was granted on the basis that a Utah statute provides that no life insurance contract would be effectuated unless the individual insured "in writing applies therefor or consents thereto". Since it was undisputed that Linda Alleman had not signed the application for insurance, nor had she consented thereto in writing, the district

court held that under the Utah statute no contract of insurance ever came into existence.

Utah Code Ann. § 31–19–5 (1953) reads as follows:

Life or disability insurance—*Written consent* of insured—Exceptions—Group insurance—Husband and wife—Children—Family policies.

—No life or disability insurance contract upon an individual, except a contract of group insurance or of group or blanket disability insurance as defined in this code, shall be made or effectuated unless at the time of the making of the contract the individual insured, being of competent legal capacity to contract, *in writing applies therefore or consents thereto*, except in the following cases: ... (Emphasis added.)

Alleman argues in this Court that the Utah statute merely requires that before a life insurance contract may be effectuated the individual insured must apply therefore in writing *OR* consent thereto, and that such consent may be verbal. As indicated, the district judge ruled that under the statute in order for a life insurance to become effectuated the individual insured must himself apply therefore in writing, *OR*, if he makes no such written application, he must consent thereto and such consent must itself be in writing.

We find no decision of the Utah Supreme Court which bears directly on the problem here at hand. Such being the case, the considered judgment of a federal district judge as to the law of his resident state is entitled to great weight and should not be disturbed unless we are firmly convinced that he has misconstrued the local law in question. *Julander v. Ford Motor Company*, 488 F.2d 839, 844 (10th Cir. 1973) and *Binkley v. Manufacturers Life Insurance Company*, 471 F.2d 889, 891 (10th Cir. 1973), *cert. denied*, 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973). Under the circumstances, we are disinclined to disturb the trial court's reading of the Utah statute. Indeed, the plain meaning of the statute appears quite clearly to be that the "in writ-

ing" provision applies not only to the application itself but to any consent in lieu of a written application. To hold that the consent could be verbal would seriously undermine any requirement that the application be in writing.

*Wren v. New York Life Insurance Company*, 493 F.2d 839 (5th Cir. 1974), is supportive of the position taken by the trial court in the present case. In *Wren* the Fifth Circuit was concerned with a Georgia statute that is similar, though not identical, to the Utah statute here under consideration. The Georgia statute provides that a policy of life insurance would not be effectuated unless the individual insured "applies for or consents in writing thereto ...." Ga.Code Ann. § 56–2407. In *Wren* the individual insured did not apply for the insurance in writing, nor did he consent thereto in writing, although it was undisputed that he had given verbal permission to his former wife to take out a policy on his life. On appeal, the Fifth Circuit upheld the trial court's ruling that no valid life insurance contract was effectuated because the insured did not apply for the policy or consent to such application in writing as required by the Georgia statute. The Fifth Circuit observed that the purpose of the Georgia statute is to put the "consent" issue beyond all question by requiring it to be in writing.

We deem Alleman's reliance on such cases as *Arko v. Farmers Insurance Exchange*, 30 Utah 2d 276, 516 P.2d 1395 (1973) and *Long v. United Benefit Life Insurance Co., Inc.*, 29 Utah 2d 204, 507 P.2d 375 (1973) to be misplaced. *Arko* involved an automobile insurance policy, not a policy of life insurance. In *Long* the insured had personally signed the application, unlike the present case where Linda Alleman did not sign anything.

Judgment affirmed.