Lana WADE, Plaintiff and Appellant,

v.

UTAH FARM BUREAU INSURANCE COMPANY and Country Mutual Life, Defendants and Respondents.

No. 19305.

Supreme Court of Utah.

May 6, 1985.

---

**21.** *Utah Gas, supra* note 3.

**22.** *Id.* at 314, 422 P.2d at 533.

**23.** *Id.*

Pete N. Vlahos, Ogden, for plaintiff and appellant.

H. Wayne Wadsworth, Salt Lake City, for defendants and respondents.

PER CURIAM:

Plaintiff appeals from an adverse judgment on findings that an insurance policy under which she claimed to be a beneficiary was not binding upon the defendant Country Mutual Life at the time of the death of the intended insured. We affirm.

Stanley E. Wade (Wade) was an agent for Country Mutual Life during the time at issue here. On Friday, February 2, 1979, he filled out an application for life insurance in the amount of $25,000 for his mother-in-law, Lola F. Cook, who signed the application in his office. Wade and plaintiff, then his spouse, were named as primary beneficiaries, with plaintiff's two brothers named as contingent beneficiaries. A receipt of even date for $459.11 indicates that the first quarterly premium was paid in cash. Mrs. Cook also signed an "Agent's Report and Certificate" showing that she was referred for a medical examination, authorizing the Medical Information Bureau to release medical information under certain conditions not relevant here and authorizing any physician or medical facility to release health information to Country Mutual Life. Wade found Mrs. Cook dead at home in the early morning hours of February 5. Wade immediately informed his district manager, who called Country Mutual Life's home office for instructions on how to proceed with the application. He was told that the home office would handle the matter. Country Mutual Life returned Mrs. Cook's premium payment by check, payable to Lola F. Cook Estate, to Wade with a cover letter explaining that the application could not be processed because necessary information was not received prior to Mrs. Cook's death. Wade deposited the amount to his insurance agency account. Plaintiff did not learn about her mother's application for life insurance until almost a year later when she and Wade had separated. The receipt found among Mrs. Cook's belongings could not be located at the time of trial, but a specimen was introduced into evidence.

The single issue before this Court is whether the language of the receipt, "agreement pertaining to effective date of insurance," required Country Mutual Life to insure Mrs. Cook from the date of application. The pertinent part of the receipt provides as follows:

It is mutually agreed by Applicant and Company as follows:

I. The insurance applied for shall be effective from date of this receipt and application or the date of the last medical examination required (if any) and any further investigation the Company may make of the Applicant's health or medical history, *whichever date is later*, if the Company by its authorized Officers at its Home Office is satisfied, after investigation and such medical examinations as may be required, that the proposed insured *as of such later date* was, under the Company's rules and standards, insurable for and entitled to the insurance on the plan at the rate of premium and the amount exactly as applied for and if the total insurance in this Company on the life of the proposed insured does not exceed $75,000 including the amount now applied for, all existing amounts and any additional benefits payable by the Company as a result of the death of the proposed insured by accidental means.
(Emphasis added.)

█ The interpretation of contract language presents us with a question of law, on which we owe no deference to the trial court's construction, but are free to make our own independent interpretation. *Bradshaw v. Burningham*, Utah, 671 P.2d 196 (1983), and cases there cited. That question is dispositive here.

In *Jacobson v. Kansas City Life Insurance Co.*, Utah, 652 P.2d 909 (1982), and *Williams v. First Colony Life Insurance Co.*, Utah, 593 P.2d 534 (1979), this Court was faced with issues similar to those in this case. In *Jacobson*, the effective date for coverage was the later of the date of the receipt or the date of completion of any and all medical examinations required by the company. The applicant there had failed to complete the required medical examination before he died, and this Court held his failure to fulfill a condition precedent fatal to his estate's claim of coverage. Similarly in *Williams*, medical examinations required by the insurance company were made one of the conditions precedent under which insurance might become effective prior to policy delivery. Again, the applicant died before he accomplished the necessary medical examination, and this Court upheld the trial court's judgment denying coverage.

The case before us is no different. The effective date of insurance coverage is unambiguously stated in the receipt to be the later of (1) the date of receipt and application or (2) the date of the last medical examination required (if any) and any further investigation made by the company. The evidence is undisputed that Mrs. Cook was asked to undergo a medical examination in order to obtain insurance coverage. The agent's report and certificate, mentioned *ante*, leaves no doubt about that requirement. Country Mutual Life also introduced into evidence "underwriting information" listing required procedures for various age groups of applicants. Mrs. Cook was 65 years old when she died. In order to obtain life insurance in the amount of $25,000, she would have had to undergo an intermediate medical examination, defined as including "medical history, height, weight, body measurements, blood pressure, pulse and urinalysis" (regular examination) and additionally a lung capacity test and a resting EKG. The application would have been considered on a nonmedical basis only if her insurance had not exceeded $1,000. Devon C. Morris, plaintiff's own witness and the former district manager for Country Mutual Life, acknowledged that medical examination requirements were never waived and that "after the application was written, if the person's medical history was sufficient and if there was [sic] no problems, that the person was bound on on [sic] insurance as of that moment."

*Long v. United Benefit Life Insurance Co.*, 29 Utah 2d 204, 507 P.2d 375 (1973), and *Prince v. Western Empire Life Insurance Co.*, 19 Utah 2d 174, 428 P.2d 163 (1967), relied on by plaintiff, are distinguishable from the fact situation here. In *Long*, the applicant took out life insurance and was told by the insurance agent at the time he completed and signed the application "that he was insured from then on,

until the application was thereafter accepted or denied by the company." *Long, supra* at 29 Utah 2d 205, 507 P.2d 376. Apparently no medical examination was required under his insurance coverage. *Id.* at 29 Utah 2d 206, 507 P.2d 377. This Court correctly held that the pertinent language of the conditional receipt constituted a condition subsequent and that the insurance company's failure to reject coverage during the applicant's lifetime resulted in liability to his widow. In *Prince*, the applicant had undergone several medical examinations required under his policy and was killed before yet another scheduled examination could be performed. This Court found that the phrase "completion of medical examination" contained in the receipt was ambiguous and that the insurance company could not properly rely on that language to deny coverage. We there decided that a letter to the insurance agent with a comment "in order for us to make our best offer to [doctor], we will need an afternoon heart chart ..." was proof that the insurance company had accepted Prince as an insurable risk before he died. We cited with approval the rationale that "the effectiveness of the temporary insurance shall be conditioned on the insurability of the applicant at the time of the application or the medical examination." *Id.* at 167. Once an insurance company had satisfied itself that the applicant was an insurable risk, a contract of preliminary insurance was in force. On the other hand, if the insurance company had not satisfied itself that the applicant was an insurable risk, it could not be held liable under the "binding receipt." Under the facts of that case, Prince was held to be an insurable risk and the insurance policy was payable to his estate.

■ Here, by contrast, Mrs. Cook's death made it impossible for Country Mutual Life to learn whether she was an insurable risk. No medical examination could be performed, and thus the condition precedent to coverage was never fulfilled. Consequently, the "agreement pertaining to effective date of insurance" was not binding upon Country Mutual Life at the time of Mrs. Cook's death, and no life insurance policy was in effect.

In light of this holding, it is not necessary to address plaintiff's evidentiary issue. The judgment is affirmed.

ZIMMERMAN, J., does not participate herein.