MOORE, Chief Justice
(dissenting).
I respectfully dissent because I believe the evidence of the alleged breach of contract by Alfa Life Insurance Corporation (“Alfa”) for temporary life-insurance coverage and of the alleged negligence of Brandon Morris was sufficient to allow the jury to resolve the facts in favor of Kimberly Colza (“Kimberly”). For the reasons stated below, I also believe the jury verdict on the negligent-procurement claim against Morris is consistent with the verdict on the breach-of-contract claim.

A. Breach of Contract

A conditional receipt was included with the application for life insurance filed by Dante Colza (“Dante”). The conditional receipt states: “The total amount of life insurance, including accidental death benefits, which may become effective prior to delivery and acceptance of a policy of insurance shall not exceed $100,000.” (Emphasis added.) Although Alfa argues that no contract existed because Dante died before his insurance application had been processed and accepted, this portion of the conditional receipt suggests that Dante was insured for $100,000 even prior to Alfa’s acceptance of the policy.
Many courts have held that such conditional receipts afford applicants temporary insurance coverage until the insurance company determines whether the conditions have been satisfied and the applicant receives permanent coverage.[10] “Under *1258 this view, temporary insurance is in effect from its date pending satisfaction of the condition.” 1A Couch on Insurance § 13:12, Conditions Subsequent (3d ed. rev.2010). “Consistent with this view, requirements of applicant ‘good health’ or ‘insurability do not delay the effect of temporary insurance but give the insurer the right to terminate coverage if it determines that the insured was not in good health at the time of the application.” Id. Dante’s temporary coverage of $100,000 took effect pursuant to the terms of the conditional receipt but was subject to later termination by Alfa if all the conditions for coverage were not met. Therefore, the question whether Alfa breached the terms of the conditional receipt was properly submitted to the jury. Alfa could be held liable for this breach of contract even if all conditions precedent for permanent coverage had not been met and permanent coverage never became effective. If Alfa could be held liable for breach of contract, then it could be held liable for bad-faith failure to pay, which claim was also properly submitted to the jury.

B. Negligence

Alfa and Morris argue that, as a matter of law, no contract existed because, they say, the conditions in the application agreement and the conditional receipt were never met. Kimberly alleges that it was Morris’s negligence that prevented the conditions from being met, i.e., that if Morris had not negligently handled the application agreement, the conditions would have been met and Dante would have been insured under the “Standard Tobacco” rate when he died. In addition, there is no evidence indicating that Dante ever saw a hard copy of the application agreement, so he could not have been negligent for failing to read it.
“ ‘[Wjhen an insurance agent or broker, with a view to compensation, undertakes to procure insurance for a client, and unjustifiably or negligently fails to do so, he becomes liable for any damage resulting therefrom.’ ” Highlands Underwriters Ins. Co. v. Elegante Inns, Inc., 361 So.2d 1060, 1065 (Ala.1978) (quoting Timmerman Ins. Agency, Inc. v. Miller, 285 Ala. 82, 229 So.2d 475, 477 (1969) (emphasis added)). The evidence indicating that Morris negligently handled the application agreement includes Kimberiys testimony that Morris did not ask Dante question 16(g) regarding traffic violations; that Morris never provided Dante with a hard copy of the application;[11] that Morris showed Dante only the signature line on the electronic-signature pad but did not show Dante the actual agreement; and that Morris informed Kimberly and Dante that Dante would be covered as soon as they provided Morris with a check for the premium applicable to Alfa’s “Preferred Tobacco” rate. Morris, who questioned the Colzas as they ate their dinner, allegedly told Dante that Morris would complete any unfinished portions of the application after the meeting when Morris returned to the office. Morris himself testified that Alfa never informed him that he was required to show potential customers the terms of *1259 the application agreement before obtaining their signatures on the electronic-signature pad and also that it was not his practice to allow potential customers to read the application agreement before they proffered their signature.
On the application, the signature alleged to be Dante’s is dated September 3, 2010, even though the meeting between Morris and Dante occurred on September 2, 2010. Justin Morton, an employee of Dante’s who was present during the meeting with Morris, testified that he did not remember Dante signing the electronic-signature pad. The only evidence indicating that the signature was Dante’s was Dante’s daughter’s opinion that it looked like her father’s handwriting. Although these facts are disputed, they are immaterial to whether Kimberly may recover for Alfa’s failure or refusal to provide temporary coverage under the conditional receipt.
Allen Foster, Alfa’s vice president in Life Underwriting, testified that the failure to select “Standard Tobacco” instead of “Preferred Tobacco” was Morris’s fault. Although Foster also testified that Morris could not have known about Dante’s cholesterol level, his family history of heart problems, and his driving history when Morris filled out the application, Morris could have known about these issues if he had asked about them. Furthermore, it was the jury’s prerogative to consider whether Dante’s frank admission to the doctor conducting the medical examination for Alfa about his health and driving history suggests that he was honest about his health and driving history and that he would have discussed them freely with Morris and Alfa had Morris, in fact, asked about them.
The majority opinion appears to disregard the above evidence and to treat the evidence of the Colzas’ alleged contributory negligence as mandating a judgment as a matter of law in favor of Morris. If anything, the facts here give rise to genuine disputes that a jury should have, and did, consider,[12] and the jury was instructed as to contributory negligence. By reversing the trial court’s judgment on the ground of contributory negligence and rendering a judgment as a matter of law in favor of Morris, the majority is, in essence, declaring that our understanding of the facts on appeal is superior to the understanding of the jury, which rendered its verdict only after hearing all the evidence and sitting through nine days of trial.

Conclusion

In light of the foregoing, I would affirm the judgment in favor of Kimberly and against Alfa and Morris, but I would remand the case for a recalculation of damages. It appears that if Alfa breached the terms of the conditional receipt, then it did so by failing to pay the $100,000 in temporary coverage, and that if Morris negligently failed to procure insurance, it was because his handling of the application resulted in a denial of the permanent $150,000 coverage for which Dante would have qualified but for Morris’s actions. Finally, if Alfa breached the terms of the conditional receipt, then it could be found liable for bad-faith failure to pay.

. Duggan v. Massachusetts Mut. Life Ins. Co., 736 F.Supp. 1072, 1075 (D.Kan.1990); Anderson v. Country Life Ins. Co., 180 Ariz. 625, 886 P.2d 1381 (Ct.App.1994); Farmers New World Life Ins. Co. v. Crites, 29 Colo.App. 394, 487 P.2d 608 (1971); Dunford v. United of Omaha, 95 Idaho 282, 506 P.2d 1355, 1357-58 (1973); Kaiser v. National Farmers Union Life Ins. Co., 167 Ind.App. 619, 627-28, 339 N.E.2d 599, 604 (1976); Denney v. Washington Nat'l Ins. Co., 14 Mich.App. 469, 165 N.W.2d 600 (1968); Glarner v. Time Ins. Co., *1258 465 N.W.2d 591, 595-98 (Minn.Ct.App.1991); Damm v. National Ins. Co. of America, 200 N.W.2d 616, 619-20 (N.D.1972); Steelnack v. Knights Life Ins. Co. of America, 423 Pa. 205, 206-07, 223 A.2d 734, 735 (1966): and Long v. United Benefit Life Ins. Co., 29 Utah 2d 204, 507 P.2d 375 (1973).

. Morris likewise testified that he gave Dante a hard copy of the conditional receipt and a hard copy of the legal terms of the application agreement, but there is no evidence indicating that Morris or Alfa provided Dante with a hard copy of the application agreement itself.

. I note in particular the claim that neither Dante nor Kimberly had a chance to review the application agreement before Dante allegedly signed only the signature page on an electronic-signature pad, as well as Morris's testimony that he did not allow clients to view the terms of the application that appeared on the electronic-signature pad.